## NORTHERN PACIFIC RAILROAD COMPANY *v.* HERBERT.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

Argued December 4, 8, 9, 1885.—Decided February 1, 1886.

When the allowance of a challenge to a juror for cause is assigned as error, it should appear that it was not peremptory if peremptory challenges are allowed.

An allowance of a challenge to a juror for cause and the selection of another competent and unbiased juror in his place, works no prejudice to the other party.

It is not error that the court below, after motion to set aside a verdict as excessive, ordered that the motion should be granted unless the plaintiff should at once remit the amount deemed by the court to be in excess, but in that case the motion should be denied and judgment entered for the remainder.

An employer is not liable for injuries to his servant caused by the negligence of a fellow-servant in a common employment; but this exemption does not extend to injuries caused by the carelessness or neglect of another person in the master's service in an employment not common to that in which the person injured is engaged, and upon a subject in regard to which the person injured has a right to look for care and diligence on the part of the other person as the representative of the common master.

If no one is appointed by a railway company to look after the condition of its cars, and see that the machinery and appliances used to move and to stop them are kept in repair and in good working order, it is liable for the injuries caused thereby. If one is appointed by it charged with that duty, and the injuries result from his negligence in its performance, the company is liable. He is, so far as that duty is concerned, the representative of the company.

A statute which enacts that "an employer is not bound to indemnify his employé for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed in the same general business" does not apply to losses suffered by an employé in consequence of the negligence of another person, employed by the same employer in another and not in the same general business.

A statute which provides that "there is no common law in any case where the law is declared by the codes" does not take from the court the duty of referring to the common law in order to determine the meaning of a term used in the codes, when they fail to define it.

The Northern Pacific Railroad Company is a corporation created under the laws of Congress to construct a railroad and

a telegraph line from Lake Superior to Puget Sound. In 1879, it had constructed and was operating the road from Duluth, in Minnesota, to Bismarck, in Dakota. On the 24th of October of that year, the plaintiff in the court below, the defendant in error here, was a brakeman in its yard at Bismarck, where its cars were switched upon different tracks and its trains were made up for the road. It was his duty, among other things, to set and to loosen the brakes of the cars whenever necessary, and whenever ordered to do so by the yard-master. At the time mentioned, he was ordered to stop, with the brakes, two cars, which had been switched upon a track in the yard. In obedience to this order he went upon the rear car and attempted to set the brake attached to it, but the brake was so badly broken and out of order that it could not be made to work. As soon as he discovered this he stepped on the forward car in order to stop it. The brake on that car was a "step-brake," and in order to work it he was obliged to place his foot on the step attached to the car below the top, and this brought his foot and leg between the two cars. This brake was also out of order, and while attempting to set it, his foot being upon the step, the car struck another car on the track, and was suddenly stopped. The draw-bar and bumper of the rear car had been pulled out, and for want of them the two cars, when the forward one was suddenly stopped, came violently together, crushing his leg, so that amputation became necessary. To recover damages for the injury sustained he brought this action against the company, alleging that it was its duty to provide good and safe cars, and machinery, and apparatus of a like character for braking and handling them, and also to make rules and regulations for switching and handling them in the yard, and for notifying employés of the condition of defective and broken cars, so that they might not be subjected to unnecessary danger; but that it neglected its duty in these particulars, and thereby, without his fault, he was injured as stated.

In its answer the company admitted the allegations as to the employment of the plaintiff and the injuries he had received, but set up that it was his duty to know, and that he did know the condition of each of the cars, and that he carelessly put his

leg between them when setting the brake of the forward car, and thus, through his own fault, suffered the injury of which he complains.

There was a verdict in favor of the plaintiff for $25,000. A motion for a new trial was made on various grounds; among others, that the damages were excessive. The court ordered that a new trial be granted unless he remitted $15,000 of the verdict, and in case he did so that the motion be denied. He remitted the amount, and judgment was entered in his favor for the balance, and costs of suit, which the Supreme Court of the Territory affirmed. The defendant then sued out this writ of error.

For the reversal of the judgment several errors of the court below are assigned; but, so far as they are deemed material, they may be reduced to four: 1, in sustaining a challenge to a juror; 2, in denying a new trial on condition that the plaintiff should remit a part of the sum awarded by the verdict; 3, in refusing to dismiss the suit at the close of the plaintiff's case; 4, in refusing to charge that the plaintiff should have taken notice of the defects in the cars, and that he was guilty of such negligence in that respect as to deprive him of a right to recover.

*Mr. W. P. Clough* for plaintiff in error (*Mr. George Gray* was with him on the brief) as to the challenge, cited *Strauder* v. *West Virginia*, 100 U. S. 303; *Ex parte Virginia*, 100 U. S. 339; *Neal* v. *Delaware*, 103 U. S. 370: as to the general question of liability, *Hough* v. *Railway Co.*, 100 U. S. 213; *Besel* v. *New York Central & Hudson River Railroad Co.*, 70 N. Y. 171; *King* v. *Boston & Worcester Railroad Co.*, 9 Cush. 112; *Gilshannon* v. *Stony Brook Railroad Co.*, 10 Cush. 228; *Gilman* v. *Eastern Railroad Co.*, 10 Allen, 233; *Holden* v. *Fitchburgh Railroad Co.*, 129 Mass. 268; *Walker* v. *Boston & Maine Railroad Co.*, 128 Mass. 8; *Lanning* v. *New York Central Railroad Co.*, 49 N. Y. 521: that the exception in the Dakota code did not apply, *Yeaton* v. *Boston & Lowell Railroad Co.*, 135 Mass. 418; *Gibson* v. *Northern Central Railway Co.*, 29 N. Y. Supreme Ct. (22

Hun) 289; *McCosker* v. *Long Island Railroad Co.,* 84 N. Y. 77; *Flannagan* v. *Chicago & Northwestern Railway Co.,* 50 Wisc. 462; *Brick* v. *Rochester, New York & Pennsylvania Railroad Co.,* 98 N. Y. 211.

*Mr. Thomas Wilson* for defendant in error cited as to the challenge, that it was without prejudice, *Heaston* v. *Cincinnati & Fort Wayne Railroad Co.,* 16 Ind. 275, 279; *Atchison Topeka & Santa Fé Railroad Co.* v. *Franklin,* 23 Kansas, 74; *Carpenter* v. *Dame,* 10 Ind. 125, 130; *Morrison* v. *Lovejoy,* 6 Minn. 319, 350; *United States* v. *Cornell,* 2 Mason, 91, 104, 105; *Hollis* v. *State,* 8 Tex. App. 620; *Grissom* v. *State,* 8 Tex. App. 386; *McKinney* v. *State,* 8 Tex. App. 626; *State* v. *Lawler,* 9 N. W. Rep. 698; *Sullings* v. *Shakespeare,* 9 N. W. Rep. 451; *Atlas Mining Co.* v. *Johnston,* 23 Mich. 36; *Mimms* v. *State,* 16 Ohio St. 221, 228–9; *Erwin* v. *State,* 29 Ohio St. 186; *State* v. *Elliott,* 45 Iowa, 486; *Barnes* v. *Newton,* 46 Iowa, 567; *West* v. *Forrest,* 22 Missouri, 344; *Herbert* v. *Northern Pacific Railroad Co.,* 13 N. W. Rep. 349; *Sutton* v. *Fox,* 55 Wisc. 531, 540 : to the proposition that the duty of maintaining machinery in proper repair for the protection of employés operating it, devolves upon the master, and he is liable for injuries resulting from a failure to perform such duty; that even if not expressed, this is implied in the contract between the parties; and that the statute of Dakota made no change in this rule, *Hough* v. *Railway Co.,* 100 U. S. 213; *Wabash Railway Co.* v. *McDaniels,* 107 U. S. 454; *Chicago & Milwaukee Railroad Co.* v. *Ross,* 112 U. S. 377 : to maintain that the rule that the master is not liable to one servant for the negligence of a fellow-servant does not exempt the master from liability for his own negligence, *Fuller* v. *Jewett,* 80 N. Y. 46; *Ford* v. *Fitchburg Railroad Co.,* 110 Mass. 240, 261; *Bessex* v. *C. & N. W. Railway Co.,* 45 Wisc. 477, 481; *Shanny* v. *Androscoggin Mills,* 66 Maine, 420, 426; *Drymala* v. *Thompson,* 26 Minn. 40; *Wedgwood* v. *C. & N. W. Railway Co.,* 41 Wisc. 478; *Toledo, Peoria & Warsaw Railroad Co.* v. *Conroy,* 68 Ill. 560 : that it was competent for the court to deny a new trial on condition that plaintiff should remit part of the verdict, *Diblin* v. *Murphy,* 3

Sand. 19; *Collins* v. *Albany & Schenectady Railroad Co.,* 12 Barb. 492; *Blunt* v. *Little,* 3 Mason; 102, 107; *Kinsey* v. *Wallace,* 36 Cal. 462, 480, 481; *Murray* v. *Hudson River Railroad Co.,* 47 Barb. 196, 205; *Doyle* v. *Dixon,* 97 Mass. 208, 213; *Hayden* v. *Florence Sewing Machine Co.,* 54 N. Y. 221; *Belknap* v. *Boston & Maine Railroad Co.,* 49 N. H. 358; *Collins* v. *City of Council Bluffs,* 35 Iowa, 432; *Union Rolling Mill Co.* v. *Gillen,* 100 Ill. 52.

MR. JUSTICE FIELD delivered the opinion of the court. After stating the facts as above reported, he continued:

1. As to the challenge to a juror. It appears that one Weaver, summoned as a juror, testified that he was a lumber dealer, and that the company gave him a place on its right of way for a lumber yard, without rent, and also that he had heard the accident to the plaintiff spoken of and explained. It was not shown, however, that he had any actual bias for or against either party, or any belief or opinion touching the merits of the case. He was, nevertheless, challenged, and the allowance of the challenge constitutes the first error assigned. It does not appear whether the challenge was for cause or was peremptory. Under the statute of Dakota each party is entitled to three peremptory challenges. It is for the party asserting error to show it; it will not be assumed. But if we regard the challenge as for cause, its allowance did not prejudice the company. A competent and unbiased juror was selected and sworn, and the company had, therefore, a trial by an impartial jury, which was all it could demand. *United States* v. *Cornell,* 2 Mason, 104; *Heaston* v. *Cincinnati & Fort Wayne Railroad Co.,* 16 Ind. 275, 279; *Atchison, Topeka & Santa Fé Railroad Co.* v. *Franklin,* 23 Kansas, 74; *Carpenter* v. *Dame,* 10 Ind. 125, 130; *Morrison* v. *Lovejoy,* 6 Minn. 349, 350.

2. The exaction, as a condition of refusing a new trial, that the plaintiff should remit a portion of the amount awarded by the verdict was a matter within the discretion of the court. It held that the amount found was excessive, but that no error had been committed on the trial. In requiring the remission

of what was deemed excessive it did nothing more than require the relinquishment of so much of the damages as, in its opinion, the jury had improperly awarded. The corrected verdict could, therefore, be properly allowed to stand. *Hayden* v. *The Florence Sewing Machine Co.*, 54 N. Y. 221, 225; *Doyle* v. *Dixon*, 97 Mass. 208, 213; *Blunt* v. *Little*, 3 Mason, 102, 107.

3. The dismissal of the suit at the close of the plaintiff's case was moved on the ground that the plaintiff had failed to establish a cause of action; and in support of this position it is contended that the plaintiff was a fellow-servant of the officer or agent of the company, who was charged with the duty of keeping the cars in order, and, therefore, could not recover against the company for injuries suffered by reason of the latter's negligence, and that this exemption from liability is declared by the statute of Dakota.

The general doctrine as to the exemption of an employer from liability for injuries to a servant, caused by the negligence of a fellow-servant in a common employment, is well settled. When several persons are thus employed there is necessarily incident to the service of each the risk that the others may fail in that care and vigilance which are essential to his safety. In undertaking the service he assumes that risk, and, if he should suffer, he cannot recover from his employer. He is supposed to have taken it into consideration when he arranged for his compensation. As we said on a former occasion: "He cannot in reason complain if he suffers from a risk which he has voluntarily assumed, and for the assumption of which he is paid." *Chicago & Milwaukee Railroad Co.* v. *Ross*, 112 U. S. 377, 383.

It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such

liability. The servant does not undertake to incur the risks
arising from the want of sufficient and skilful co-laborers, or
from defective machinery or other instruments with which he
is to work. His contract implies that in regard to these mat-
-ters his employer will make adequate provision that no danger
shall ensue to him. This doctrine has been so frequently as-
serted by courts of the highest character, that it can hardly
be considered as any longer open to serious question. It was
substantially declared in the recent case of *Hough* v. *Railway
Co.*, 100 U. S. 213, 218, where we said that, notwithstanding a
railroad corporation may be controlled by competent, watchful
and prudent directors, and care and caution are exercised in the
selection of subordinates at the head of the several branches of
its service, its obligation still remains to provide and maintain
in a suitable condition the machinery and apparatus to be used
by its employés; and that it "cannot, in respect of such mat-
ters, interpose between it and the servant, who has been in-
jured without fault on his part, the personal responsibility of
an agent, who, in exercising the master's authority, has vio-
lated the duty he owes, as well to the servant as to the cor-
poration." In that case the engine of the railroad, coming
in contact with an animal, was thrown from the track over
an embankment, whereby the whistle fastened to the boiler
was forced out, thus permitting hot water and steam to escape,
which so scalded the engineer as to cause his death. The en-
gine was thrown from the track because the cow-catcher or
pilot was defective; and the whistle was forced out because it
was insecurely fastened. These defects were owing to the
negligence of the company's master-mechanic and the foreman
of the round-house, to whom was committed the exclusive man-
agement of the motive power of the company, with control over
all the engineers employed. In an action by the widow and
child of the deceased the company set up as a defense that, if
the alleged defects existed, which it denied, they were owing
to the negligence of those servants, for which the company was
not liable. The court held that the company was not thereby
exonerated from liability.

In *Flike* v. *Boston & Albany Railroad Co.*, 53 N. Y. 549, it

was held by the Court of Appeals of New York that a corpora-
tion is liable to an employé for negligence or want of proper
care in respect of such acts and duties as it was required to
perform as master or principal, without regard to the rank or
title of the agent entrusted with their performance, and that
as to such acts the agent occupies the place of the corporation,
and that the latter is deemed to be present and consequently
liable for the manner in which they are performed. There it
appeared that the accident, which caused the injury complained
of, was in consequence of an insufficient number of brakemen
on the cars of the company. The fact that the company had
an agent, whose business it was to make up the trains, to hire
and station the brakemen, and to prepare and despatch the
trains, did not relieve it from liability.

In *Corcoran* v. *Holbrook*, 59 N. Y., 517, it appeared that the
defendants operated a cotton mill, to the management of which
they gave no personal attention, but entrusted it to a general
agent with full power. In the mill was an elevator used by the
employés, which became out of repair and unsafe, of which the
agent had notice. He neglected to have it repaired and an
employé was injured by its fall. The court held that the de-
fendants were liable, that the general agent was not a mere
fellow-servant, but occupied the place of the owners, and that
they could not, by delegating their authority to another and
absenting themselves, escape from liability for the non-perform-
ance of duties they owed to their employés. "As to acts," said
the court, "which a master or principal is bound as such to
perform towards his employés, if he delegates the performance
of them to an agent, the agent occupies the place of the master,
and the latter is deemed present and liable for the manner in
which they are performed."

In *Fuller* v. *Jewett*, 80 N. Y. 46, an engineer on the Erie
Railway was killed by the explosion of the boiler of a loco-
motive, caused by its defective condition. To the action
brought by his administratrix, it was contended that the negli-
gence of the mechanics in not keeping the boiler in a safe con-
dition was the negligence of his co-employés in the service of
the company, for which it was not responsible. But the court

affirmed the principle of the decisions already cited, and held that an act or duty which the master, as such, is bound to perform for the safety and protection of his employés cannot be delegated so as to relieve him from liability to a servant injured by its omission or its negligent performance, whether the nonfeasance or misfeasance be that of a superior or inferior officer, agent, or servant, to whom the doing of the act or the performance of the duty has been committed. "In either case, in respect to such act or duty," said the court, "the servant who undertakes or omits to perform it is the representative of the master and not a mere co-servant with the one who sustains the injury." *Pantzar* v. *Tilly Foster Iron Co.*, 99 N. Y. 368, decided the present year by that court, is to the same effect.

In *Ford* v. *Fitchburg Railroad*, 110 Mass. 240, which was a similar action for injuries caused by the explosion of an engine boiler out of repair, the same defence was made, that the want of repair was owing to the negligence of a fellow-servant in the department of repairs, but the court said, that "the agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with a master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require. In one the master cannot escape the consequence of the agent's negligence; if the servant is injured in the other he may." And the court held that there was no error in a refusal to instruct the jury that the corporation was not liable unless the plaintiff proved that the president, directors or superintendent, either personally knew, or by the exercise of reasonable care in the performance of their duties might have known, of the existence of the defect in the engine which caused the explosion, or that the persons employed to have charge of the engine and keep it in repair were incompetent; observing that "the question was not whether the officers named knew, or might have known, of the defect or of the incompetency of those who had charge of the repairs, but

whether the corporation in any part of its organization, by any of its agents, or for want of agents, failed to exercise due care to prevent injury to the plaintiff from defects in the instrument furnished for his use."

In *Shanny* v. *Androscoggin Mills*, 66 Maine, 420, the action was by an employé of the defendants for injuries to her hand caused by insufficient and defective covering to machinery and gearing, which she was employed to clean. On the trial the defendants contended, among other things, that if the defective covering was owing to the negligence of a fellow-servant, whose duty it was to repair it, they were not liable. But the court said, " that the person whose duty it was to keep the machinery in order, so far as that duty goes, was not, in any legal sense, the fellow-servant of the plaintiff. To provide machinery and keep it in repair, and to use it for the purpose for which it was intended, are very distinct matters. They are not employments in the same common business, tending to the same common result. The one can properly be said to begin only when the other ends. The two persons may, indeed, work under the same master and receive their pay from the same source; but this is not sufficient. They must be at the time engaged in a common purpose or employed in the same general business. We do not now refer to the different grades of services about which there is considerable conflict of opinion, but of the different employment. In the repair of the machinery the servant represented the master in the performance of his part of the contract, and, therefore, in the language of the instructions, his negligence in that respect is the ' omission of the master or employer in contemplation of law.' "

Numerous decisions from other courts to the same purport might be added. *Bessex* v. *Chicago & Northwestern Railway Co.*, 45 Wisc. 477, 481 ; *Wedgwood* v. *Chicago & Northwestern Railway Co.*, 41 Wisc. 478 ; *Toledo, Peoria & Warsaw Railroad Co.* v. *Conroy*, 68 Ill. 560 ; *Drymala* v. *Thompson*, 26 Minn. 40. The doctrine laid down in them is specially applicable when the employer is a common carrier of passengers and property, and steam is the motive power, inasmuch as any

defect in the machinery may be followed by serious disasters. The same considerations which render him responsible in such cases for the safe transportation of passengers and property should also impose upon him an equal responsibility to his employés, so far as their safety depends upon the character and condition of the machinery and appliances used in the transportation. Where the employé is not guilty of contributory negligence, no irresponsibility should be admitted for an injury to him caused by the defective condition of the machinery and instruments with which he is required to work, except it could not have been known or guarded against by proper care and vigilance on the part of his employer.

According to the authorities cited there can be no question as to the liability of the railroad company to the plaintiff for the injuries he sustained. If no one was appointed by the company to look after the condition of the cars, and see that the machinery and appliances used to move, and to stop them, were kept in repair and in good working order, its liability for the injuries would not be the subject of contention. Its negligence in that case would have been in the highest degree culpable. If, however, one was appointed by it charged with that duty, and the injuries resulted from his negligence in its performance, the company is liable. He was, so far as that duty is concerned, the representative of the company; his negligence was its negligence, and imposed a liability upon it, unless, as contended, it was relieved therefrom by the statute of Dakota. Section 1130 of the Civil Code of that Territory is in these words:

"Co-employés.—An employer is not bound to idemnify his employé for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employé."

The next section, 1131, is as follows:

"Employer's Negligence.—An employer must in all cases

indemnify his employé for losses caused by the former's want of ordinary care."

We do not consider that the first of these sections changes the law previously existing as to the exemption of an employer from responsibility for injuries committed by a servant to a fellow-servant in the same general business, or identifies the business of providing safe machinery and keeping it in repair with the business of handling and moving it. The two kinds of business are as distinct as the making and repairing of a carriage is from the running of it. They are, as stated in the case decided by the Supreme Court of Massachusetts, from which we have cited above, separate and independent departments of service, though the same person may, by turns, render service in each. The person engaged in the former represents the employer, and in that business is not a fellow-servant with one engaged in the latter. The words " same general business " in the section have reference to the general business of the department of service in which the employé is engaged, and do not embrace business of every kind which may have some relation to the affairs of the employer, or even be necessary for their successful management. If any other construction were adopted there would, under the section, be no such thing as separate departments of service in the business of railroad companies; for whatever would tend to aid in the transportation of persons and property would come under the designation of its general business. The same section is in the civil code of California, and our construction of it accords with that of the Supreme Court of the State. In *Beeson* v. *The Green Mountain Gold Mining Company*, 57 Cal. 20, the defendant, a corporation engaged in quartz mining, appointed a superintendent to supervise and manage its mining operations, with authority to employ and discharge laborers at the mine. One of the laborers thus engaged lost his life in a fire, which originated from a defective pipe put up by a tinner under the supervision of the superintendent, and connected with the engine used to raise ore and take water from the mine. It did not appear that the deceased knew or had reason to know of the defect. In an action by his widow for damages in consequence of his death, it was

held, against the contention of the company, that the superin-
tendent was not a fellow-employé of the deceased in the sense
intended by the section; that, for the purposes of managing the
business and determining what machinery should be used and
how placed, he was the representative of the company, and
that the deceased was not bound to know whether a defect ex-
isted in the machinery and appliances not within his view, but
had a right to rely upon the implied engagement of the com-
pany that the pipe was properly placed and constructed. It
was also held that the tinner in performing his share of the
work was not a fellow-servant of the deceased; that as his
work was done under the direction and supervision of the super-
intendent, it was the same as if done by the superintendent in
person.

We do not perceive that the provision of the sixth section of
the Civil Code of Dakota, that in the Territory "there is no
common law in any case where the law is declared by the
codes," at all affects the question before us. There cannot be
two rules of law on the same subject contradicting each other.
Therefore, where the code declares the law there can be no oc-
casion to look further; but where the code is silent the common
law prevails. What constitutes the "same general business" is
not defined by the code, but may be explained by adjudged
cases. The declaration by the code of a general rule, which
is conformable to existing law, does not prevent the courts
from looking to those cases for explanation any more than it
prevents them from looking into the dictionary for the mean-
ing of words.

Section 1131 of the Dakota code expresses the general law,
as we have stated it to be, that an employer is responsible for
injuries to his employés caused by his own want of ordinary
care. His selection of defective machinery, which is to be
moved by steam power, is of itself evidence of a want of ordi-
nary care, and allowing it to remain out of repair, when its
condition is brought to his notice, or by proper inspection
might be known, is culpable negligence. Here, the cars had
been defective for years. The brakes were all worn out, and
their condition had been called to the attention of the yard-

master, who had control of them while in the yard, and might have been ascertained, upon proper inspection, by the officer or agent of the company charged with the duty of keeping them in repair, yet nothing was done to repair either brakes or cars. Under these circumstances it cannot be said that the company exercised, through its officer or agent charged with that duty, ordinary care to keep the cars and brakes in good condition, and, therefore, under the provisions of this section, it is bound to indemnify the plaintiff.

4. As to the alleged negligence of the plaintiff only a few words need be said. Of course, he was bound to exercise care to avoid injuries to himself. If he had known, or might have known by ordinary attention, the condition of the brakes and cars when he mounted the cars, and thus exposed himself to danger—in other words, if he did not use his senses as men generally use theirs to keep from harm—he cannot complain of the injury which he suffered. He had been employed in the yard only one day before the accident occurred, and it does not appear that the defects in the brakes or cars were brought to his notice, though there was some evidence that statements as to their defective condition were made in his presence and hearing. He testifies that he saw no defect in either of them, and was not apprised of any. The defect in the brakes was not patent to the eye; it could be known only from an attempt to set them, or by information from others. He had a right, therefore, to assume, without such information, that they were in a condition in which it was safe to mount the cars to set them, when ordered by the yard-master.

It was contended in the court below that the plaintiff might have inferred, from the manner in which the cars were attached, that there was a defect in them. The manner of their attachment showed nothing as to the condition of the brakes; and the court left the question of his negligence to the jury. It instructed them that if, from the unusual appearance of the car upon which he was engaged, as, for instance, its being attached to the next car by chains, or if from any statements of the yard-master or car-repairer, he had reason to believe that the car in question was defective or had been broken, he was

bound to take care not to expose his person to injuries which a broken and defective car might cause; and, further, that if they found from the evidence that the company was guilty of negligence in not providing proper and safe machinery and appliances, in consequence of which neglect the injury was received, still, if he failed to exercise that prudence, care, and caution which prudent men, under similar circumstances, would ordinarily exercise, and he thereby contributed approximately to the injury, he was not entitled to recover.

The verdict of the jury, upon these instructions and others of the same general purport, negatived any imputation of negligence on his part. We see, therefore, no error on the trial, and the judgment below must be

*Affirmed.*

Mr. Justice HARLAN concurring.

I concur in the opinion just delivered by Mr. Justice Field, and will add a few suggestions in support of the conclusion reached by the court.

It is contended, on behalf of the railroad company, that if it used ordinary care in the *selection* of the employé to whose negligence the plaintiff's injuries are attributed, it is protected from liability by section 1130 of the Dakota code, even if such culpable employé had superior or controlling authority over the injured employé, and even if the injuries were caused by the defective condition of the appliances and machinery provided by the company through its agents for the use of the employé so injured. For—it is argued—the words "the same general business" in that section embrace every branch or department of the common employer's business, and no distinction is therein made between employés in respect of grades or the nature of the particular service rendered by them. Even if that were admitted to be a proper construction of section 1130, standing by itself, the inquiry still arises as to the object of section 1131, which declares that the employer "must, *in all cases,* indemnify his employé for losses caused by the *former's* want of ordinary care." The latter section was plainly intended to cover cases not provided for in the preceding sec-

tion. If one section applies to corporations, the other equally applies to them. The two sections must be construed together. And so construed, it is manifest that, while the statute establishes the rule that the employer is not bound to indemnify his employé "for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person, employed by the same employer in the same general business," it, also, with equal distinctness, declares two exceptions to that rule: 1. Where the employer has neglected to use ordinary care in the selection of the employé whose negligence caused the losses in question. 2. Where the losses were caused by the employer's own want of ordinary care. The latter exception is as explicitly declared as is the former, and cannot be ignored or nullified by construction.

What case is more distinctly within section 1131 than one where a railroad company fails to appoint some one to provide and maintain machinery and appliances safe and suitable for use by its employés, or where its agent or employé, appointed to that duty, does not exercise ordinary care in its discharge? Such an agent or employé is, of necessity, the representative of the corporation, and his want of ordinary care, in respect of such matters, is negligence upon the part of the corporation itself. It cannot, in reference to those matters, whatever it may be permitted to do in reference to other matters connected with its business, "interpose between it and the servant who has been injured, without fault on his part, the personal responsibility of an agent." That is clearly shown in the opinion of the court. Between an agent, charged with the performance of the company's duty to prove and maintain safe and suitable appliances and machinery, and the employés who use them, the relation of fellow-servants does not exist. The want of ordinary care upon his part, is, in the language of section 1131, and according to the weight of judicial authority, a want of ordinary care upon the part of the corporation itself. This case, therefore, comes within that section.

MR. JUSTICE BLATCHFORD, with whom concurred MR. JUSTICE

BRADLEY, MR. JUSTICE MATTHEWS, and MR. JUSTICE GRAY, dissenting.

MR. JUSTICE BRADLEY, MR. JUSTICE MATTHEWS, MR. JUSTICE GRAY and myself are unable to concur in the judgment of the court in this case.

The Civil Code of Dakota (sections 6 and 2129), provides as follows:

"Sec. 6. In this Territory there is no common law, in any case where the law is declared by the Codes."

"Sec. 2129. The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. This Code establishes the law of this Territory respecting the subjects to which it relates; and its provisions are to be liberally construed, with a view to effect its objects and to promote justice."

The rules of the common law are, therefore, not applicable, in Dakota, in any case where the statute law is declared in the Civil Code, on the subject, and that statute law is not to be construed strictly, but liberally, with a view to effect its objects and to promote justice.

Now, what is the statute law of Dakota on the subject involved in this case? It is found in sections 1129, 1130 and 1131 of the Civil Code, as follows:

"Sec. 1129. An employer must indemnify his employé, except as prescribed in the next section, for all that he necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employé, at the time of obeying such directions, believed them to be unlawful.

"Sec. 1130. An employer is not bound to indemnify his employé for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employé.

"Sec. 1131. An employer must, in all cases, indemnify his employé for losses caused by the former's want of ordinary care."

These provisions are very clear. The language used in sec-

tion 1130, "another person employed by the same employer in the same general business," indicates that, in the view of the three sections of the Code in question, a co-employé is another person employed with the employé, by the same employer, in the same general business. Therefore, wherever the word "employé" is used in any one of the three sections, it means a person who may be such a co-employé.

By section 1129, the railroad company is not bound to indemnify Herbert, except as prescribed in section 1130, for what he necessarily expended or lost by discharging the duty he did, in reference to the freight cars. What is prescribed in section 1130 is this: The company is not bound to indemnify Herbert for what he so lost in consequence of the negligence of his co-employés in the same general business, unless the company neglected ordinary care in the selection of such co-employés. No want of care in such selection is alleged, and the action is sought to be maintained, and the verdict for the plaintiff may have been rendered, not on the neglect of the corporation itself to provide and maintain suitable cars, brakes, draw-bars, and bumpers, but on the neglect of inferior employés of the corporation to keep them in repair. This is clearly shown by the refusal of the Court to instruct the jury, as requested by the defendant, that the plaintiff could not recover by "reason of any acts of negligence on the part of any other persons employed by the defendant in the same general business with the plaintiff," and that "this would include the yard-master and car-repairer;" and by the fact, that, on the contrary, it instructed them, that "the negligence of those entrusted by the corporation with the power and duty of procuring or keeping in repair such machinery is, in law, the negligence of the corporation."

It is sought to destroy the application of sections 1129 and 1130 to this case, by invoking the rule set forth in section 1131, that "an employer must, in all cases, indemnify his employé for losses caused by the former's want of ordinary care," and by saying, that, in this case, the company did not exercise ordinary care, because the co-employés of Herbert were guilty of the negligence which caused his injury. But that is the very

case provided for by section 1130; and the doctrine of the court comes to this, in Dakota, that even though a railroad'corporation, acting by its board of directors, exercises ordinary care in the selection of its employés, and provides adequate and competent machinery, outfit and appliances, and prescribes proper rules and regulations for their use, and has no knowledge or notice of any defects in them, and no circumstances exist sufficient to charge it with such knowledge or notice, it is guilty of want of ordinary care, within section 1131, towards an employé who is injured by the negligence of his co-employés in the same general business, by the mere fact of the happening of such injury through such negligence, although section 1130 distinctly declares, that, in such a case, the employer shall not be liable to the injured employé.

It is a rule for the construction of statutory provisions, especially those embraced in the same statute, that all must be construed so that all shall have effect, if possible. There is ample scope for the application of section 1131, by limiting it to cases not embraced within section 1130. Otherwise, no force is given to section 1130.

The failure to give proper effect to section 1130 is the more marked, because, with one exception, the only authorities cited in the opinion of the court, to sustain its views, are cases decided where the common law prevails, and not where such statutory provisions as those in Dakota exist—provisions which declare that the common law is abrogated as to the subject-matter of the controversy in this suit.

Sections 4, 1969, 1970, and 1971, of the Civil Code of California, are the same, respectively, as sections 2129, 1129, 1130, and 1131, of the Civil Code of Dakota. But there is nothing in the case of *Beeson v. Green Mountain Gold Mining Co.,* 57 Cal. 20, cited in the opinion of the majority of the court, which sanctions the view that the yard-master or the car-repairer in the present case was not " a person employed in the same general business " with Herbert, within the meaning of such a statute.

Considering the case to be governed by the local statute, we express no opinion upon the question whether the instructions given to the jury accorded with the rules of the common law.