## WOLFE v. HENWOOD.
### No. 13497.

Circuit Court of Appeals, Eighth Circuit.
July 7, 1947.

---

J. M. Willemin, of Jonesboro, Ark. (Arthur L. Adams and Arthur L. Adams, Jr., both of Jonesboro, Ark., on the brief), for appellant.

Joe C. Barrett, of Jonesboro, Ark. (Berl S. Smith and Archer Wheatley, both of Jonesboro, Ark., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Alice Wolfe, administratrix, brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, to recover for the death of her intestate, Owen Wolfe, which resulted from burns sustained by Wolfe while in the employ of defendant as a section hand. At the close of the evidence the defendant filed a motion for directed verdict. The trial court reserved ruling on the motion and submitted the case to the jury which returned a verdict for plaintiff for $5089.00. Thereafter defendant filed a motion for judgment notwithstanding verdict. The court granted the motion and entered the judgment for defendant from which judgment plaintiff appeals.

The trial court held that there was no proof of negligence of defendant which reasonably could be found to be the proximate cause of the accident in which Wolfe sustained fatal injuries. In determining whether the trial court erred in this regard and in granting defendant's motion for judgment notwithstanding verdict, we view the evidence in the light most favorable to plaintiff.

Owen Wolfe had been employed as a section hand by the Cotton Belt Railway for 27 years. Shortly after he was first employed he had sustained an injury which resulted in loss of vision of one eye, and on returning to his employment he was assigned to rather light work in the railroad yards in Jonesboro, Arkansas. His usual work consisted of filling and maintaining switch marker lamps, oiling and repairing manually operated switches and keeping them in operating order, and some janitor work. On occasions he would perform other usual and ordinary tasks of a section laborer.

On the day of the accident, April 18, 1945, Wolfe and three other laborers were instructed by the section foreman to assist two employees of the Water Service Department, in bailing out an accumulation of fuel oil and water from concrete catch basins located in defendant's yards and used to catch leakage from a fuel line running from storage tanks to fuel spouts used in servicing oil burning locomotives. The basins were about four feet square and three to four feet deep. In performing this work as instructed, the men got a certain amount of oil on their clothing. Wolfe's gloves and his clothing from his waist down became more or less saturated with the fuel oil.

On completing the work the men were directed by a water service man to return to their normal work and they returned to

the toolhouse. No cleansing facilities were available in the toolhouse though there were such facilities nearby in the depot and in the roundhouse. The men procured waste material and gasoline from the toolhouse and proceeded to use gasoline soaked waste to remove the fuel oil from their clothes. After cleaning himself with the waste Wolfe voluntarily and without being ordered to do so, but with the idea of protecting the toolhouse from possible fire, sought to dispose of the waste by burning it. He placed it on the ground near the toolhouse, removed the glove from his right hand, took a small box of matches from his pocket, held it in his left hand, struck a match on the box and threw it out on the waste. As he did this the flame set the glove on his left hand on fire and he slapped the side of his leg to put out the fire. This set fire to his pant legs, the fire spread rapidly and notwithstanding efforts of the other employees to remove the clothing and extinguish the flames, Wolfe sustained severe burns which caused his death on July 11, 1945. There was evidence that gasoline mixed with fuel oil when ignited produced a temperature greater than that produced by gasoline alone, and that the mixture required more time for burning than gasoline alone.

Plaintiff's charge of negligence on the defendant's part is predicated on defendant's failure to furnish a pump to use in cleaning the catch basins rather than to require the men to dip the oil manually, failure to furnish protective clothing, particularly rubber boots to protect Wolfe from the oil, and failure to provide adequate facilities for cleansing after dipping the oil and for disposing of the oil-soaked waste.

■ The defendant had the duty to use reasonable care to furnish Wolfe a safe place in which to perform his work. Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Thomson v. Boles, 8 Cir., 123 F.2d 487. But defendant's obligation was not such as to impose liability for injury regardless of due care and regardless of whether the injury was one reasonably to be anticipated or foreseen as a natural consequence of defendant's act. In order to recover under the Federal Employers' Liability Act, plaintiff had the burden of proving that defendant was negligent, and that such negligence in whole or in part caused Wolfe's injuries. 45 U.S.C.A. § 51; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598; Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Chicago, St. P. M. & O. R. Co., v. Arnold, 8 Cir., 160 F.2d 1002; Chicago & N. W. R. Co. v. Grauel, 8 Cir., 160 F.2d 820. And as stated by the Supreme Court in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 143 A.L.R. 967:

"* * * the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. A fair generalization of the rule is given in the Senate Committee report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.' Of course in any case the standard of care must be commensurate to the dangers of the business. Hough v. Railway Co., 100 U.S. 213, 218, 25 L.Ed. 612; Cf. Northern Pac. R. Co. v. Herbert, 116 U.S. 642, 652, 6 S.Ct. 590, 595, 29 L.Ed. 755."

■ Applying these settled principles to the facts presented, the correctness of the trial court's ruling is manifest. We fail to perceive a basis for a finding of negligence in failing to furnish a pump to remove the oil and water from the pits. The evidence goes no farther than to establish that it would have been as practical to remove the oil by mechanical device as it was to remove it by dipping. It was, of course, within the realm of the possible that an accident would occur during the process of removing the oil, regardless of method used, but there was no

evidence that this chance was unduly enhanced by the method used. Defendant had a choice of methods, neither one of which was inherently dangerous and cannot be charged with lack of due care in the choice made.

Nor could defendant, in the circumstances of the case, be charged with negligence in failing to furnish protective clothing and to provide more adequate facilities for cleansing after the oil was dipped, and for disposing of oil-soaked waste. The job to be performed was a simple task which hardly required use of protective clothing as a safety measure. Furthermore, while the record discloses that Wolfe did not have boots on at the time of the accident, it does not disclose that he did not have access to boots and it was shown that at least one of the other men went home to get his boots, and wore them while dipping the oil and water from the catch basin. Likewise the fact that there were no cleansing facilities at the toolhouse was of slight consequence. The proof was that facilities for washing were available at the roundhouse located not more than 500 feet from the toolhouse, and also at the depot, located about 200 feet from the toolhouse, and that Wolfe could have used these facilities. In burning the waste Wolfe acted on his own initiative. He adopted this method of disposal at a time when it was an extremely dangerous one because of the condition of his clothing. In the circumstances, defendant cannot be convicted of negligence for alleged failure to furnish a safer method. It was not the method that was unsafe, rather it was the time and manner of its use.

■ But even if the evidence justified a finding of negligence (which it does not), there was a total failure to establish that negligence of defendant was "in whole or in part" the cause of the injury. The plain fact is Wolfe sustained fatal injuries as a direct result of his own affirmative and voluntary act in lighting a match while he was soaked with a mixture of gasoline and fuel oil and in attempting to extinguish the flame by slapping his glove on his trousers. Plaintiff argues that Wolfe was an uneducated colored laborer who could not be held to a high standard of care, but that fact cannot create liability in defendant. We hold that the evidence established as a matter of law that Wolfe's negligent act was the sole cause of the accident.

■ Plaintiff relies on Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, and Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, but the holding in these cases, which we have very recently had occasion to follow, Chicago & N. W. v. Grauel, 8 Cir., 160 F.2d 820, does not reach the fact situation before us. For here, unlike the situation in the Lavender and Ellis cases, there is positive proof that points unmistakenly to negligence of deceased as the sole cause of the accident. The recent Supreme Court decisions do not hold that a jury question is presented in every Federal Employers' Liability Act case. The plaintiff must still establish negligence of defendant as a contributing cause of injury. Myers v. Reading Co., 67 S.Ct. 1334; Sheaf v. Minneapolis, St. P. & S. Ste. Marie R. Co., 8 Cir., 162 F.2d 110, decided June 18, 1947. The Myers Case involved the Safety Appliance Act, 45 U.S.C.A. § 1 et seq. and in commenting on that fact the Supreme Court said [67 S.Ct. 1338]:

"This simplifies the issue beyond that presented in the ordinary case under the Federal Employers' Liability Act where the plaintiff must establish the negligence of his employer."

Terminal R. Association v. Scorb, 8 Cir., 151 F.2d 361, and Henwood v. Chaney, 8 Cir., 156 F.2d 392, relied on by plaintiff, are readily distinguishable on the facts. So far as we know every case in which a jury's verdict has been held to be conclusive has presented evidence from which a reasonable mind might infer that negligence of defendant railroad was a cause contributing to the employee's injury or death.

■ The Federal Employers' Liability Act does not subject a railroad to that degree of liability imposed by a workmen's compensation law, Myers v. Reading Co., supra, nor place the railroad in the position of an insurer of its employees, Ellis v. Union Pacific R. Co., supra. If

the railroads ought to bear the financial burden of every accident in the industry, the power to so prescribe is in the Congress and not in the courts. We conclude that the trial court properly granted defendant's motion for judgment notwithstanding verdict.

This determination renders unnecessary a consideration. of appellee's point regarding alleged error in instructions, and likewise renders unnecessary a ruling on appellant's motion to strike the point for failure of appellee to file a cross-appeal.

Judgment affirmed.