**Boyd R. RINGHISER, Plaintiff,**

v.

**The CHESAPEAKE & OHIO RAIL-WAY COMPANY, a corporation, Defendant.**

**Civ. No. 3902.**

United States District Court
S. D. Ohio, E. D., at Columbus.

March 15, 1956.

**530**

Alex S. Dombey, Leonard J. Stern, Columbus, Ohio, for plaintiff.

Richard T. Rector, Wilson & Rector, Columbus, Ohio, for defendant.

CECIL, District Judge.

On October 7, 1950, Boyd R. Ringhiser, the plaintiff herein, arose in the afternoon, made preparation to report for duty at 4:45 P.M., had a bowel movement, made a mental calculation and thereby set in motion a chain of events which created a result both unusual and tragic.

The sequence of these events is as follows: The plaintiff's bowel movement was unsatisfactory; "This won't do," said he to himself, (statement made by plaintiff at trial, but ordered stricken); he took a dose of salts and washed it down with sweet cider; he got in his car and drove to Parson's Yard, the switching yard of the defendant, and had a bowel movement at the round house. He then got on his engine and maneuvered it to track twelve, where it was coupled onto a train scheduled for Walbridge Yard at Toledo. While sitting in his engine waiting for his air brake test, he had an urgent call of nature and "had to go quick." He dismounted from his locomotive cab to go to a toilet a short distance west. A long train of empties passed between him and the object of his immediate attention. He could not wait for this train to pass and went to No. 8 switch track and climbed into a low-sided gondola car to answer his call of nature. While thus engaged, a yard crew switched two cars into No. 8 switch track. These cars came in contact with the car ahead of plaintiff's car and it likewise came in contact with plaintiff's car. The gondola car in which plaintiff had taken his position was loaded with steel plates and when the cars made contact the plates shifted, caught plaintiff's right leg and crushed it so that a few days later it had to be amputated.

This unusual series of events with its tragic result is equalled only by the novelty of plaintiff's claim that his injury was caused in whole or in part by the negligence of the defendant. The claim was presented to a jury and resulted in a verdict in favor of the plaintiff for $40,000.

The case comes before the Court on a motion of the defendant for judgment or in the alternative for a new trial. The question now before the Court was presented at the close of the plaintiff's case and again at the close of all the evidence. On both of those occasions the Court passed what seemed strongly to be an inescapable duty because of a persistent feeling of some uncertainty as to whether or not the unusual circumstances and the novelty of the question might present a jury question.

The Court charged the jury that there were two hypotheses upon which the plaintiff might establish liability. One, did the defendant furnish the plaintiff a safe place to work? This had to do with the adequacy of toilet facilities. The other, were the defendant's employees negligent in switching the cars onto switch track No. 8?

By plaintiff's Exhibit 1, a situation map of the west end of Parson's Yard, it is shown that there were five toilets within the proximity of the plaintiff's engine at the time of the accident. They were in three general directions from the engine, and were respectively 940', 785', 740', 385' and 217' away. There was another one about a mile and a half to the east, in a switchman's shanty. There was a switchman's shanty near the place where the plaintiff's locomotive was standing. This had no toilet and the plaintiff centered his attack against the defendant's lack of facilities on this spot in particular.

Here was a condition that had existed for an indefinite period of time. The defendant had done nothing at the time of the accident. It was operating a switch yard in the course of its business of railroading. Trains were arriving and departing. Trains were being made up and extensive switching operations were being carried on.

The Court is of the opinion that the defendant could not be liable for negligence because of this condition unless it could have reasonably foreseen and anticipated that employees would be subjected to danger by reason of a lack of toilet facilities.

This is an essential element of this case and the Court charged the jury as follows: ·

"The proximate cause of a result is that cause which in a natural and continued sequence contributes to produce the result, and without which it would not have happened. In order to arrive at a finding that negligence was the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent act, if any, and that it was such as might or ought to have been foreseen, in the light of the attending circumstances. In contemplation of law, an injury that could not have been foreseen or reasonably anticipated, as the probable result of an act of negligence, is not actionable. The responsibility of the defendant for

its employees does not extend to consequences which cannot be regarded as natural results of their conduct and which on that account could not by ordinary forecast have been anticipated."

In Brady v. Southern Ry. Co., 320 U. S. 476, at page 483, 64 S.Ct. 232, at page 236, 88 L.Ed. 239, the Court said, quoting from Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256:

"But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

To this quotation the Court added "Events too remote to require reasonable prevision need not be anticipated. * * * The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events."

The sequence of events and the result therefrom in this case are so extraordinary that to expect the defendant to have anticipated and foreseen such a consequence of not having an additional toilet at the switchman's shanty, or any additional toilets, would have been to expect the miraculous.

There is evidence that employees sometimes used gondola cars in lieu of toilets. The Court must assume that this was known to the defendant. Whether it was done as a convenience or a necessity was not indicated. It appears that such use was neither approved nor disapproved by rule of the defendant. There is no evidence that any employee, committee of employees or union representative ever made complaint that there was a lack of toilet facilities.

It appears that the gondola car used by the plaintiff was only about 40 feet away, (about three tracks over) while the nearest toilet was 217 feet away. The switchman's shanty was 175 feet from the plaintiff. Whether the plaintiff

would have used a toilet or the gondola car as a matter of convenience or expediency is only a conjecture. In defendant's Exhibit B, a statement of the plaintiff made at the hospital, he stated "My rush call was so urgent that I was lucky to be able to make it to the gondola car in time."

The plaintiff says there should have been sanitary facilities at the switchman's shanty. How many such facilities are enough? If the defendant must anticipate such happenings as occurred to the plaintiff in what area might the next blow strike?

■ The Court is impelled to the conclusion that there is no evidence upon which reasonable minds might differ to support a claim that the defendant did not furnish a reasonably safe place to work, so far as toilet facilities were concerned.

Upon consideration of all of the evidence concerning the switching operation, the Court concludes that there was a lack of evidence upon which to base a finding of negligence. The plaintiff was in the car and in no position to see what happened. The only witnesses to the switching were the employees who did it. No inference of negligence can be drawn from their testimony. There was some conflict in the testimony as to how far the plaintiff's car moved after the contact. No inference of negligence can be drawn from the mere fact that the car moved any particular number of feet.

The plaintiff testified that he thought the car was an empty when he started to get into it. If it had been empty the plaintiff could not have been injured or at least nothing more than bumps and bruises. Again, the question of foreseeability arises. Could the defendant have reasonably foreseen or anticipated that placing a loaded car in such a place and that the normal switching of cars onto the same track in the operation of its business would produce such a result?

Even though the defendant had some knowledge that employees sometimes used gondola cars for the purpose of relieving themselves, it could not be required to inspect each car before coupling another car on to it. It had no duty to anticipate that a car was being used for such a purpose. Viewing the evidence in the most favorable light to the plaintiff, the Court is of the opinion that there is no evidence of negligence upon which reasonable minds might differ.

■ Counsel for plaintiff say in their brief that there is another item of negligence; that is, the manner of loading the car. This was not pleaded, no issue was raised on it during the trial, it was not argued by counsel and the Court did not charge on it. The only evidence is that the steel shifted when the contact was made. It is claimed that the doctrine of res ipsa loquitur applies. The Court concludes that this is not an issue in the case.

■ Finally, the Court concludes that there is no evidence of negligence against the defendant to support the verdict of the jury. There is no debatable issue of negligence on which reasonable minds might differ. In arriving at this conclusion, the testimony is considered in the most favorable light to the plaintiff.

The motion of the defendant for judgment will, therefore, be sustained.

■ The basis of recovery in cases under Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., is negligence, common-law negligence, of the employer which in whole or in part causes the injuries of the employee. This is an essential element of the statute and it has been proclaimed by the Court of Appeals of the 6th Circuit as late as December 13, 1955, in the case of Herdman v. Pennsylvania R. R. Co., 228 F.2d 902, 903. The Court said, "There was 'a complete absence of probative facts to support the conclusion' of negligence".

Counsel for the plaintiff and the defendant have cited a great many cases in their briefs in support of their respective positions. These are not par-

ticularly helpful for the reason that each case must stand or fall on its own particular facts. The cited cases show what in each of those cases the Court held was either negligence or not negligence. None of these cases are comparable to the one at bar on the facts.

The facts of Wolfe v. Henwood, 8 Cir., 162 F.2d 998, certiorari denied 332 U.S. 773, 68 S.Ct. 88, 92 L.Ed. 357, closely parallel the facts in the instant case. The Court said, 162 F.2d at page 1000, "Plaintiff's charge of negligence on the defendant's part is predicated on defendant's * * * failure to provide adequate facilities for cleansing after dipping the oil and for disposing of the oil-soaked waste.

"The defendant had the duty to use reasonable care to furnish Wolfe a safe place in which to perform his work. [Citations.] But defendant's obligation was not such as to impose liability for injury regardless of due care and regardless of whether the injury was one reasonably to be anticipated or foreseen as a natural consequence of defendant's act. In order to recover under the Federal Employers' Liability Act, plaintiff had the burden of proving that defendant was negligent, and that such negligence in whole or in part caused Wolfe's injuries".

"Likewise the fact that there were no cleansing facilities at the toolhouse was of slight consequence. The proof was that facilities for washing were available at the roundhouse located not more than 500 feet from the toolhouse, and also at the depot, located about 200 feet from the toolhouse, and that Wolfe could have used these facilities." 162 F.2d at page 1001.

Lavender v. Kurn, 327 U.S. 645, 66 S. Ct. 740, 90 L.Ed. 916, is cited by counsel for the plaintiff. This has an entirely different factual situation and is not helpful except as it may indicate a more liberal interpretation of negligence in this class of cases.

In this connection, the case of Atlantic Coast Line R. R. Co. v. Smalls, 4 Cir., 216 F.2d 842, is noteworthy. The Court said, 216 F.2d at page 844:

"We do not think, however, that there is any evidence of negligence on the part of the company to sustain a recovery by plaintiffs. It appears that the crossing at which the employees had congregated was 200 yards distant from the station. They were not ordered or invited by the company to stand in the highway at the crossing, and we know of no principle upon which the company could be held guilty of negligence in not lighting it. Their injuries resulted, not from any negligence of the company, but from their own negligence or the negligence of a third person, for whose acts the company was in no way responsible. Plaintiffs rely upon the decision in Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73, where a woman employee was assigned to night work in a dangerous locality where she was likely to suffer injury from the criminal acts of persons who were not employees, but that case manifestly has no application here."

This case was reversed by the Supreme Court without opinion in 348 U.S. 946, 75 S.Ct. 439, 99 L.Ed. 740.

Cahill v. New York, New Haven & Hartford Railroad Co., 2 Cir., 224 F.2d 637, is another case that was reversed by the Supreme Court, without opinion, 350 U.S. 898, 76 S.Ct. 180, 100 L.Ed. 790. The Court said, 224 F.2d at the bottom of page 638:

"The duty to provide a railroad employee with a safe place to work is not an absolute duty; if it were the employer would be an insurer of the employee's safety and negligence would be irrelevant. Under the Federal Employers' Liability Act, *the employer's duty is the same as that imposed by the common law, namely, to use reasonable care in furnishing his employees with a safe place to work.* [Emphasis added.] All work on a railroad involves some danger, but it has to be done and the dangers involved do not involve liability provided the railroad takes all practicable precautions consistent with the conduct of the business."

The principles above stated are well established principles of law and the Court assumes they are correct. The Supreme Court, in reversing without opinion, did not announce any abrogation of these principles.

The facts in the Cahill case are not parallel with the facts in the case at bar. Judge Frank, in writing a dissenting opinion, takes the position that the railroad company was negligent in assigning an untrained man to perform the duties that he was required to do at the time he was injured. This dissenting opinion raises an interesting question. Judge Frank says, 224 F.2d at page 640:

"I assume, arguendo, that the inference needed to support the verdict would not suffice in a suit not brought under the Federal Employers' Liability Act. But the more recent Supreme Court decisions make it clear that, under that Act, the jury's power to draw inferences is greater than in common-law actions. * * * They [majority of the court] neglect the following later decisions in which the Court, as is generally recognized, adopted a new attitude in F.E.L.A. cases:"

The Supreme Court has never announced that the common-law rule of negligence is not applicable to F.E.L.A. cases. This Court holds, therefore, that it cannot be excused from applying the rule of common-law negligence to the facts in the instant case. It is upon this basis that the Court has reached its conclusion. In the light of this "new attitude" to which reference is made by Judge Frank, it is interesting to note the dissenting opinion of Mr. Justice Frankfurter in Stone v. New York, Chicago & St. Louis Railroad Co., 344 U.S. 407, 410, 73 S.Ct. 358, 360, 97 L.Ed. 441. The entire opinion is most interesting. A portion of this opinion is as follows:

"However, the central components of liability for negligence—that it rests upon fault and that appropriate causality must be established between the negligent circumstances and the complained-of injury—are the same for actions under the Federal Employers' Act as for any other negligence actions. For reasons that I for one have long deplored, Congress has seen fit to make such a concept of negligence the basis of compensation for inevitably untoward incidents.

"I deplore this basis of liability because of the injustices and crudities inherent in applying the common law concepts of negligence to railroading. To fit the hazards of railroad employment into the requirements of a negligence action is to employ a wholly inappropriate procedure—a procedure adequate to the simple situations for which it was adapted but brutally unfit for the situations to which the Federal Employers' Liability Act requires that it be put. The result is a matter of common knowledge. *Under the guise of suits for negligence, the distortions of the Act's application have turned it more and more into a workmen's compensation act, but with all the hazards and social undesirabilities of suits for negligence because of the high stakes by way of occasional heavy damages, realized all too often after years of unedifying litigation.*" (Emphasis added.)

■ The Court, having arrived at the conclusion that the evidence fails to show that the defendant was negligent in the respects charged by the plaintiff, the question raised by counsel for the defendant that the Court erred in its charge, is immaterial. However, in order that all questions presented may be disposed of, the Court will proceed to pass on the motion for new trial. This question is raised in support of counsel's contention that if the Court does not grant judgment to the defendant, it should at least grant a new trial. From the inception of this trial, the Court was concerned with the question as to whether or not there was any causal relation between any failure on the part of the defendant to have sufficient sanitary facilities and the injuries suffered by the plaintiff. This involved the matter of foreseeability. Could the defendant have foreseen, or reasonably anticipated before the accident happened that any

failure to have more sanitary facilities, would have such a tragic result? This matter was stressed throughout the charge of the Court. After the jurors had been in deliberation for a period of time, they were brought back into Court for the purpose of asking a question. In answering this question, the Court again stressed the matter of foreseeability. Counsel for defendant has taken a paragraph of this supplementary charge out of context and then proceeds to base his argument upon one part of that paragraph. The entire charge was as follows:

"Now, if they failed to do this, if they failed to use and exercise ordinary care to provide a reasonably safe place for its employees to work that would be negligence. But in order for the plaintiff to recover or before there would be liability on the part of the defendant that negligence would have to be the proximate cause of the plaintiff's injuries.

"I will read a definition here and say a little more about it. The proximate cause of the result is that cause which in a natural and continued sequence continues to produce the result and without which it would not happen.

"In order to warrant a finding of negligence as the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligent act, if any, that it was such as might or ought to have been foreseen in the light of the attending circumstances.

"In contemplation of law, an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and he cannot recover.

"The responsibility of the defendant for its employees does not extend to consequences which cannot be regarded as natural results of their conduct and which on that account, on ordinary forecast cannot have been anticipated.

"I can elucidate a little further. In other words, if the defendant were negligent in not having enough toilets in order for the plaintiff to recover here, the defendant through its employees would have to anticipate that from the failure to have sufficient toilets, that is, they would have to have reasonably anticipated and foreseen that the probable result of not having enough toilets would be that this employee or some employee would be caught in an emergency and not be able to get to a toilet and have to use a car, as was done here, and that switching operations might occur as they did in this case and injure him."

The essential part of this supplementary charge was a prepared definition which was read to the jury. The Court is of the opinion that this definition is correct. It was used in the original charge without challenge from counsel on either side.

The paragraph challenged by counsel for the defendant is what the Court said in oral explanation of the definition. Counsel for defendant reads this paragraph to mean that the Court imposed a duty upon the defendant to anticipate that the plaintiff or some employee might be using a gondola car in lieu of toilet facilities and therefore, must inspect each car before switching operations. The oral explanation appears to have been based on the matter of lack of toilet facilities rather than the switching operation. As a part of this oral explanation, the Court said: "they would have to have reasonably anticipated and foreseen that the probable result of not having enough toilets would be that this employee or some employee would be caught in an emergency". It seems clear to the Court that this means in order for the railroad company to have been charged with negligence in failing to have enough toilets, it would have to have had prior to the accident, foreseen and reasonably anticipated the result that did happen.

The Court is of the opinion that there is no error in the charge and that the part complained of is in accord with Milwaukee & St. Paul Railway Co. v. Kel-

logg, and Brady v. Southern Railway Co., supra.

Counsel for defendant charges that the verdict is excessive.

The plaintiff had lost five years of income at the time of trial. If the loss of the earnings are considered, there is very little left for pain and suffering and the loss of the limb with the attendant permanent impairment.

 The Court concludes that the damages awarded are not excessive.

The motion for new trial will be overruled.