## NATIONAL LABOR RELATIONS BOARD *v.* WHITE SWAN CO,

No. 529.   Argued March 10, 1941.—Decided March 31, 1941.

*Mr. Warner W. Gardner* argued the cause, and *Solicitor General Biddle* and *Messrs. Arnold Raum, Robert B. Watts, Laurence A. Knapp,* and *Mortimer B. Wolf* were on the brief, for the National Labor Relations Board.

*Mr. H. C. A. Hofacker* for the White Swan Company.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

A certificate from the Circuit Court of Appeals for the Fourth Circuit submitted pursuant to § 239 of the Judicial Code (28 U. S. C. § 346) is as follows:

This is a petition for enforcement of an order of the National Labor Relations Board, which directed the White Swan Company, a corporation of Wheeling, West Virginia, engaged in the operation of a laundry and dry cleaning business, to cease and desist from certain unfair labor practices and to offer employment with back pay to certain employees held to have been discharged because of union affiliation and activities. The findings of the Board with respect to the unfair labor practices and discriminatory discharge of employees are sustained by substantial evidence; but a question has arisen, as to which the members of the Court are divided and in doubt, with respect to the jurisdiction of the Board in the premises.

The respondent, White Swan Company, operates a combined laundry and dry cleaning establishment in the city of Wheeling, West Virginia. While certain of its supplies are obtained from without the state, the volume of the interstate business thus involved is not sufficient, in our opinion, to bring the business within the jurisdiction of the Board. The record shows that these supplies consist of soap, bluing, bleach, solvent, coal, water, paper, tape and padding, and that respondent's purchases thereof during 1938 amounted to $38,333.15, of which $10,810.90 came from without the state. Respondent, however, operates delivery trucks in Ohio as well as in West Virginia, three of the delivery routes from its plant being in Ohio and eleven in West Virginia. The business involved is necessarily of a purely local character, as the record shows that a radius of fifteen miles is the practical limit for a laundry or dry-cleaning business in this territory. The fact that business is done in Ohio outside the state in which respondent's laundry is located, results from the fact that this purely local business is

located in a city on a state line. Respondent transports garments in its trucks from those of its customers who reside in Ohio to its plant in West Virginia to be serviced, and then after servicing returns the garments in its trucks to the customers. Approximately 12.93 per cent of its gross income for 1938 was derived from this source. In addition thereto, approximately 5 per cent of its gross income during 1938 was derived from the servicing of garments which persons not in its employment collected in Ohio, brought to its plant for servicing and delivered in Ohio after they had been serviced. Respondent's total gross income in 1938 was $128,752.96. The total income from the business obtained from persons in Ohio during this period was $28,088.43.

We recognize that the collection and delivery of garments across state lines, as above described, constitutes interstate commerce. We are advertent, however, to the admonition of the court that in applying the act we are to bear in mind "the distinction between what is national and what is local in the activities of commerce." *N. L. R. B.* v. *Jones & Laughlin* (301 U. S. 1, 30). And although the letter of the National Labor Relations Act may cover such collections and deliveries in interstate commerce as are here involved, the question arises whether a proper interpretation of the Act, in view of the intent of Congress, would include them. Cf. *United States* v. *Sorrells*, 287 U. S. 435, 446. We are divided and in doubt as to whether such collection and delivery, which results from the fact that business of a local character, such as a laundry, is located on a state line, is sufficient to bring such business within the jurisdiction of the Board under the National Labor Relations Act. To so hold would be to bring under the jurisdiction of the Board a great variety of businesses of purely local character simply because they maintain a delivery service in cities located on state lines. As there are many such cities in the United States, the question seems to us one of sufficient importance to justify us in certifying it to the Supreme Court so that it may be definitely settled.

Being divided and in doubt, therefore, this Court respectfully certifies to the Supreme Court of the United States, for its instruction and advice, the following ques-

tions of law, the determination of which is indispensable to a proper decision of the case.

1. Should the National Labor Relations Act be interpreted as having application to a business of purely local character, such as a laundry, merely because such business is located in a city on a state line and derives a substantial portion of its income from business which involves collections or deliveries of articles in a state other than that in which the business is located?

2. Where a local business, such as a laundry, is located in a city on a state line, and is not engaged in interstate commerce, except in so far as it may collect articles to be serviced and may make deliveries to customers living across the state line, is such business, by reason of such collections and deliveries, deemed engaged in "commerce" within the meaning of Subsection 6 of Section 2 of the Act of July 5, 1935, ch. 372, 29 U. S. C. A. 152 (6), so that an unfair labor practice on its part would be an unfair labor practice "affecting commerce" within the meaning of Subsection 7 of said section (29 U. S. C. A. 152 (7)) and Subsection (a) of Section 10, 29 U. S. C. A. 160 (a) ?[1]

The certificate must be dismissed.

By § 10 (a) of the National Labor Relations Act (49 Stat. 449, 453; 29 U. S. C. § 160 (a)) the Board is empowered "to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." The term "affecting commerce" is defined in § 2 (7) as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." And "commerce" by § 2 (6) is defined so as to include "trade, traffic, commerce, transportation, or communication among the several States." On a review of an order of

---

[1] The court denied a motion made by the Solicitor General to amend the certificate by embodying the purchase of supplies in interstate commerce as well as the collections and deliveries.

the Board in a Circuit Court of Appeals the "findings of the Board as to the facts, if supported by evidence, shall be conclusive." § 10 (e).

The questions do not focus "the controversy in its setting." *Lowden* v. *Northwestern National Bank & Trust Co.*, 298 U. S. 160, 163. From the certificate we do not know on what grounds the Board based its jurisdiction— that the business was "in commerce" or that it was embraced within the other categories described in § 2 (7) of the Act. The terms "business of purely local character" and "local business" are meaningful for purposes of § 10 (a) of the Act only in light of specific findings of the Board. To answer the questions we would have to make a supposition as to the sense in which the Board made its finding under § 10 (a) that the unfair labor practices were "affecting commerce." The necessity of making that supposition reveals the hypothetical and abstract quality of the questions. And the fact that on the whole record the answer might be clear whichever the theory of the Board's findings does not make the questions any the less defective. The reviewing court is passing on the validity of a specific order of the Board. Since the questions certified do not reflect the precise conclusions of the Board and the precise findings on which those conclusions were based, they necessarily have an "objectionable generality." See *United States* v. *Mayer*, 235 U. S. 55, 56; *White* v. *Johnson*, 282 U. S. 367 371; *Triplett* v. *Lowell*, 297 U. S. 638, 648; *Atlas Life Ins. Co.* v. *W. I. Southern, Inc.*, 306 U. S. 563, 571; *Pflueger* v. *Sherman*, 293 U. S. 55, 57, 58. And if, in this case, they did reflect those conclusions and findings, they would be defective as calling for a "decision of the whole case." *News Syndicate Co.* v. *New York Central R. Co.*, 275 U. S. 179, 188.

*Dismissed.*