1999 ND 31

**Gloria MARTIN, f/k/a Gloria Rath, Plaintiff, Appellant and Cross–Appellee,**

v.

**Rodney RATH, Defendant, Appellee and Cross–Appellant.**

No. 980262.

Supreme Court of North Dakota.

Feb. 23, 1999.

Rehearing Denied March 18, 1999.

Arnold V. Fleck of Wheeler Wolf, Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Cynthia G. Schaar–Mecklenberg of Paulson & Merrick, Jamestown, N.D., for defendant, appellee, and cross-appellant, submitted on brief.

NEUMANN, Justice.

[¶ 1.] Gloria Martin appeals from the district court's order and corrected judgment. Rodney Rath cross-appeals. We reverse and remand.

I

[¶ 2.] On June 4, 1980, Gloria Rath, now known as Gloria Martin, and Rodney Rath divorced under a decree awarding her custody of their minor children, and establishing Rath's child support obligation of $220 per month. The child support obligation decreased to $110 per month in October 1988 and terminated in May 1990 as the two children reached majority.

[¶ 3.] Rath's payments of his child support obligation can be described, at best, as rare. Rath made his first three payments late and in installments. From February 1981 to October 1985, Rath made no payments at all. The only money Martin received from Rath during this time was tax return intercepts. Shortly thereafter, Rath began making regular payments averaging less than $100 per month.

[¶ 4.] On June 18, 1997, Martin brought a motion in district court, requesting Rath's child support arrearage be entered as a judgment under N.D.C.C. § 14–08.1–05. On July 14, 1997, the district court issued an order finding the amount of the arrearage to be $8,063.81. The court, however, did not direct entry of a judgment based on that order.

[¶ 5.] On March 12, 1998, Martin again brought a motion in district court, requesting the court vacate the July 14, 1997, order, direct the clerk of court to compute interest on the arrearage at 12 percent per annum, and further direct the clerk to docket a money judgment against Rath for $22,971.60 in principal, and $19,778.80 in accrued interest, as of March 9, 1998.

[¶ 6.] On June 5, 1998, the district court issued an order vacating its July 14, 1997, order, and directing the clerk of court to correct the arrearage and docket a judgment reflecting that as of April 3, 1998, Rath owed $6,725.97 in principal and $22,886.40 in interest, for a total judgment of $29,612.37. The court ordered the clerk to compute the interest on the principal at 12 percent per annum, with each payment on the obligation first going to principal with no reduction in interest until principal had been paid in full.

[¶ 7.] On June 10, 1998, judgment was entered consistent with the district court's order. Martin has appealed, and Rath has cross-appealed. We consider the cross-appeal first.

II

[¶ 8.] In his cross-appeal, Rath argues the district court should have dismissed Martin's motion as res judicata because the issue presented could have been raised at earlier proceedings. Specifically, Rath argues the September 11, 1996, and the July 14, 1997, orders are final orders that preclude raising the issue of interest after the issuance of the orders. We disagree.

[¶ 9.] The September 11, 1996, order was issued after a hearing was held to review the monthly payment Rath was making under income withholding orders. The statutory scheme for child support clearly envisions periodic reviews of child support orders to ensure support is consistent with the guidelines. *Zarrett v. Zarrett,* 1998 ND 49, ¶ 8, 574 N.W.2d 855. The doctrine of res judicata does not apply to matters which are incidental or collateral to the determination of the main controversy. *Richter v. Richter,* 126 N.W.2d 634, 637 (N.D.1964). Here, the periodic review was the only issue of the proceeding. Collection of child support arrearage clearly was incidental or collateral to that issue. Consequently, the September 1996, order does not preclude Martin from later asserting a claim for interest.

[¶ 10.] The July 14, 1997, order determining the amount of child support in arrearage to be $8,063.81 was issued after Martin made a motion to reduce the amount to a judgment under N.D.C.C. § 14–08.1–05. No judgment was entered under this order. On March 16, 1998, Martin filed a motion under Rule 60(b), N.D.R.Civ.P., requesting the July 1997, order be vacated and a new order issue granting her interest on the arrearage. The district court granted the motion and issued a corrected judgment, finding a mistake entitled Martin to relief under Rule 60(b), N.D.R.Civ.P.

[¶ 11.] We review the granting of a motion under Rule 60, N.D.R.Civ.P., for abuse of discretion by the district court. *Peterson v. Peterson,* 555 N.W.2d 359, 361 (N.D.1996). A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner. *Id.* An action is arbitrary, unreasonable, or unconscionable if the court's decision is not the product of rational mental process. *Id.*

[¶ 12.] Rule 60(b), N.D.R.Civ.P., provides in relevant part:

RULE 60. RELIEF FROM JUDGMENT OR ORDER

* * * *

(b) Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or order in any action or proceeding for the following reasons: (I) mistake, inadvertence, surprise, or excusable neglect; ... or (vi) any other reason justifying relief from the operation of the judgment. The motion must be made within a reasonable time, and for reasons (I), (ii), and (iii) not more than one year after notice that the judgment or order was entered in the action or proceeding if the opposing party appeared....

[¶ 13.] Rath argues none of the conditions for granting a Rule 60(b), N.D.R.Civ.P., motion exist, and asserts such motions should be limited to situations when the moving party has had default judgment entered against them. Although Rule 60(b), N.D.R.Civ.P., may be more leniently construed regarding default judgments, it is by no means limited to cases of default. *See, e.g., CUNA Mortgage v. Aafedt,* 459 N.W.2d 801, 803 (N.D.1990).

[¶ 14.] In Martin's affidavit, she states the Regional Child Support Enforcement Unit initially assisted her in obtaining a judgment on the child support arrearage. Martin claims she told the Unit she wanted to pursue interest on the arrearage. The Unit indicated it was unsure if interest could be awarded, but if it could the Unit would be able to raise the issue. However, after filing the June 1997 motion, the Unit told Martin it would not pursue the interest, and she would have to retain a private attorney to seek the interest award. Martin states she thought she would be able to pursue the interest award with a private attorney at any time after the filing of the June 1997 motion. Martin asserts it would be unjust to restrict her recovery to the Unit's motion, because the Unit did not seek interest as she had requested and had left her with the impression that interest could be sought at a later date. We agree.

[¶ 15.] Although the posture of this Rule 60(b) motion is somewhat unique, based on the record, we do not believe the district court abused its discretion when it found a mistake had been made justifying relief under Rule 60(b), N.D.R.Civ.P.

### III

[¶ 16.] In her appeal, Martin argues the district court erred in applying the excess payments to principal first, rather than to interest first. Martin contends under the "United States rule" any payment should be applied to accrued interest first, and any portion exceeding accrued interest should then be applied to the principal amount owed on a judgment.

[¶ 17.] To decide this issue, we must first determine if the judgments created under N.D.C.C. § 14–08.1–05 are to be treated as ordinary judgments under state law.

Section 14–08.1–05(1)(a), N.D.C.C., provides:

1.  Any order directing any payment or installment of money for the support of a child is, on and after the date it is due and unpaid:

    a.  A judgment by operation of law, with the full force, effect, and attributes of a judgment of the district court, and must be entered in the judgment docket, upon filing by the judgment creditor or the judgment creditor's assignee of a written request accompanied by a verified statement of arrearage or certified copy of the payment records of the clerk of district court maintained under section 14–09–08.1 and an affidavit of identification of the judgment debtor, and otherwise enforced as a judgment;

Section 14–08.1–05, N.D.C.C., was created to bring North Dakota into compliance with federal child support enforcement guidelines. *Baranyk v. McDowell*, 442 N.W.2d 423, 425 (N.D.1989). Section 1 of Senate Bill 2432, codified at N.D.C.C. § 14–08.1–05, was in-tended to comply with section 9103 of Public Law 99–509. *Id.* The legislative history indicates the primary concern of section 9103 was to prevent retroactive modification of child support orders. *Hearing on S.B. 2432 Before the Senate Human Services and Veterans Affairs Committee*, 50th N.D. Legis. Sess. (Jan. 29, 1987) (testimony of Blaine Nordwall of the Department of Human Services). In his testimony, Nordwall explained:

> [I]n spite of that limited purpose, the federal law specifically requires that retroactive modification be precluded by making unpaid child support obligations into judgments. The bill is intended to do that, while at the same time, avoiding any amendment to existing requirements for the docketing of judgments.... [A]n *unpaid child support obligation would become an undocketed judgment, like existing judgments under state law*, which could not be docketed without following the existing North Dakota procedures. (Emphasis added.)

*Hearing on S.B. 2432, supra* (testimony of Blaine Nordwall).

[¶ 18.] The legislative history indicates the undocketed, automatic judgments for past-due child support obligations are to be treated like ordinary judgments under state law. *Baranyk*, 442 N.W.2d at 426. The only distinction is that the judgment cannot be docketed without following the procedures outlined under statute, in order to avoid imposing numerous monthly docket entries on clerks of court, and to avoid the need to search such docket entries in real estate transactions. *Hearing on S.B. 2432, supra* (testimony of Blaine Nordwall).

[¶ 19.] We next consider whether the United States rule applies as Martin suggests. The United States rule is a common law rule which provides that absent an agreement or clearly expressed intention by the parties, payments must first be applied to accrued interest, with any excess applying to the principal balance. *See Devex Corp. v. General Motors Corp.*, 749 F.2d 1020, 1024 & n. 6 (3d Cir.1984); *see also Langton v. Kops,*

41 N.D. 442, 171 N.W. 334, 336 (N.D.1919) (discussing the United States Rule).

▆ [¶ 20.] In North Dakota, section 9–12–07, N.D.C.C., governs the application of payments when there are multiple obligations. Statutory principles govern over general common law if there is a conflict. N.D.C.C. § 1–01–06. *Compare Gayer v. Gayer*, 326 Or. 436, 952 P.2d 1030 (1998) (applying common law principles to reach a similar result).

[¶ 21.] The principles which guide this situation are found in N.D.C.C. § 9–12–07(3).

*9–12–07. Performance when there are several obligations—Application.* When a debtor under several obligations to another does an action by way of performance, in whole or in part, which is applicable equally to two or more of such obligations, such performance must be applied as follows:

1.  If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be applied in such manner.

2.  If no such application is then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation the performance of which was due to him from the debtor at the time of such performance, except that if similar obligations were due to him both individually and as a trustee, unless otherwise directed by the debtor, he shall apply the performance to the extinction of all such obligations in equal proportion. An application once made by the creditor cannot be rescinded without the consent of the debtor.

3.  If neither party makes such application within the time prescribed herein, the performance must be applied to the extinction of obligations in the following order, and if there is more than one obligation of a particular class, to the extinction of all in that class ratably.

    a.  Of interest due at the time of the performance.

    b.  Of principal due at the time of performance.

    c.  Of the obligation earliest in date of maturity.

    d.  Of an obligation not secured by a lien or collateral undertaking.

    e.  Of an obligation secured by a lien or collateral undertaking.

N.D.C.C. § 9–12–07.

[¶ 22.] Rath argued both he and Martin had elected to apply his payments toward principal under N.D.C.C. §§ 9–12–07(1) or (2). Such elections, if made, would preclude the application of N.D.C.C. § 9–12–07(3). However, the record does not support Rath's assertion. Nothing in the record indicates Rath or Martin ever made such an election, and, therefore, N.D.C.C. § 9–12–07(3) controls.

▆ [¶ 23.] In N.D.C.C. § 9–12–07(3) subdivisions (a) to (e) constitute the particular classes of obligations referred to in the first paragraph of subsection (3). *See Jessup Farms v. Baldwin*, 33 Cal.3d 639, 190 Cal. Rptr. 355, 660 P.2d 813, 821 (1983) (interpreting Cal. Civ.Code 1479, which is almost identical to N.D.C.C. § 9–12–07). Accordingly, to construe the statute so all sections are given effect, subsection (3)'s ratable application for "more than one obligation of a particular class" applies only when there is more than one obligation within a particular subdivision of subsection (3). *Id.*, 660 P.2d at 822–23, 190 Cal.Rptr. 355. Thus, when obligations have different maturity dates, payments are applied to the obligation earliest in date of maturity, first to interest, then to principal. However, if multiple obligations have the same maturity date (and also share the same characteristic of being secured or unsecured), a payment would be applied ratably among all of them. *Id.*, at 823, 190 Cal.Rptr. 355.

[¶ 24.] In this case, a child support obligation becomes a judgment as a matter of law when it becomes due and unpaid. *Darling v. Gosselin*, 1999 ND 8, ¶ 7, 589 N.W.2d 192. Thus, the maturity date is the date the obligation becomes due and unpaid. Therefore, each unpaid child support obligation in this case has a different maturity date, and consequently all such unpaid child support obligations are not of the same class as defined by N.D.C.C. § 9-12-07(3).

[¶ 25.] Following the principles under N.D.C.C. § 9-12-07(3) payments applied to arrearage should be applied first to any interest due on the earliest maturing child support payment, and then to any principal due on that payment, with any remaining excess going to the next earliest maturing support payment, to be applied in the same manner, first to interest, then to principal.

[¶ 26.] Because the judgment here requires the payments to be applied first to reduce the principal and then the interest, it is contrary to N.D.C.C. § 9-12-07(3), and therefore erroneous.

IV

[¶ 27.] We reverse and remand for entry of judgment consistent with this opinion.

[¶ 28.] VANDE WALLE, C.J., MARING, KAPSNER and SANDSTROM, JJ., concur.