Filed 9/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 183

Ruth Bornsen and Nathan Bornsen, Plaintiffs

v.

Pragotrade, LLC, Pragotrade, Inc., 

and Cabela’s Retail, Inc., Defendants

No. 20110087

Certified question from the United States District Court for the District of North Dakota, the Honorable Ralph R. Erickson, Chief Judge.

CERTIFIED QUESTION ANSWERED.

Opinion of the Court by Crothers, Justice.

Nicholas B. Hall (argued), P.O. Box 610, Grafton, N.D. 58237, for plaintiffs.

Ronald H. Schneider (appeared), Schneider Law Firm, 706 South 1st Street, Willmar, MN 56201, for plaintiffs.

William L. Davidson (argued), Thomas John Evenson (appeared), Thomas Dice Jensen (on brief), Lind Jensen Sullivan & Peterson P.A., 150 South 5th Street, Suite 1700, Minneapolis, MN 55402, for defendants Cabela’s Retail, Inc.

Ariston Edward Johnson, P.O. Box 955, Bismarck, N.D. 58502-0955, amicus curiae.

Larry L. Boschee, P.O. Box 400, Bismarck, N.D. 58502-0440, amicus curiae.

Bornsen v. Pragotrade

No. 20110087

Crothers, Justice.

[¶1] The United States District Court for the District of North Dakota certified a question to this Court whether we apply the “apparent manufacturer” doctrine to N.D.C.C. ch. 28-01.3.  We answer the question “No.”

I

[¶2] Ruth and Nathan Bornsen brought a products liability action in state district court against Pragotrade, LLC, Pragotrade, Inc., and Cabela’s Retail, Inc., for negligence, strict liability, and breach of warranty, alleging Ruth Bornsen injured her hand on November 21, 2007, while using a meat grinder manufactured by Pragotrade and purchased from Cabela’s.  The Bornsens’ action was removed to the United States District Court for the District of North Dakota. 

[¶3] Before answering the complaint, Cabela’s moved to dismiss the action and submitted an affidavit under N.D.C.C. § 28-01.3-04, asserting it was not liable to the Bornsens because it was a nonmanufacturing seller of the meat grinder.  Cabela’s claimed Pragotrade manufactured the meat grinder.  Pragotrade answered, admitting it participated in the design and distribution of the meat grinder, but denying it manufactured the grinder.  The Bornsens resisted Cabela’s motion to dismiss, claiming Cabela’s was not a nonmanufacturing seller of the meat grinder and was not entitled to a dismissal under N.D.C.C. § 28-01.3-04.

[¶4] At a hearing on the motion to dismiss, the Bornsens cited 
Reiss v. Komatsu Am. Corp.
, 735 F.Supp.2d 1125 (D.N.D. 2010), and argued Cabela’s was an “apparent manufacturer” of the meat grinder under the Restatement of Torts and was not entitled to dismissal under N.D.C.C. § 28-01.3-04.  

[¶5] After supplemental briefing by the parties, the United States District Court for the District of North Dakota certified the following question to this Court: 

“Whether the North Dakota Supreme Court intends to adopt the ‘apparent manufacturer’ doctrine set forth in the Restatement (Second) of Torts § 400 or more recently, the Restatement (Third) of Torts: Product Liability § 14?”

The United States district court’s certification stated:

“II. Statement of Facts Relevant to Question Certified.

On November 21, 2007, Ruth Bornsen’s left hand was injured when it became lodged in a meat grinder her husband purchased from Cabela’s Retail, Inc.  Plaintiffs Ruth and Nathan Bornsen have sued Pragotrade, LLC, Pragotrade, Inc., and Cabela’s, alleging claims of negligence, strict liability, and breach of warranty.  The Bornsens allege a design defect due to large dimensions of the grinder opening and failure to properly warn.  Cabela’s has asserted that Pragotrade manufactured the grinder, and seeks dismissal under N.D. Cent. Code § 28-01.3-04.  The Bornsens contend that Cabela’s is not entitled to dismissal because it is an ‘apparent manufacturer’ of the product. 

“III.   Statement of Lack of Controlling Precedent in North Dakota.

The Court believes that this question involves interpretation of North Dakota law of some magnitude.  Adopting the Restatement (Second) of Torts § 400 or the Restatement (Third) of Torts: Product Liability § 14 appears to contradict the plain language of the definition of manufacturer as set forth in N.D. Cent. Code § 28-01.3-01 and likewise appears to be inconsistent with the legislature’s intent in enacting N.D. Cent. Code § 28-01.3-04.  The United States District Court, District of North Dakota, finds there exists no controlling precedent from the North Dakota Supreme Court on the certified question of law.  Resolution will be determinative to the proceedings currently pending in the United States District Court and will impact future product liability cases. 

“IV.   This Court’s Opinion.

There is a decision from the District Court for the District of North Dakota that predicts the North Dakota Supreme Court would adopt the so-called apparent manufacturer doctrine.  
Reiss v. Komatsu America Corp.
, 735 F.Supp.2d 1125 (D.N.D. 2010).  This Court is unconvinced and is of the opinion that adoption of the apparent manufacturer doctrine is inconsistent with the law in North Dakota regarding liability for non-manufacturing sellers.  The Court believes this question presents two reasonable interpretations of North Dakota law and it ought to be resolved by the North Dakota Supreme Court.”

II

[¶6] Certification of questions to this Court by federal courts and by our sister states’ appellate courts is permitted under our appellate rule providing:

“(a)  Power to Answer.  The supreme court may answer questions of law certified to it by the United States Supreme Court, a court of appeals of the United States, a United States district court, or the highest appellate or intermediate appellate court of any other state, when requested by the certifying court and the following conditions are met:

(1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding;

(2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.”

N.D.R.App.P. 47(a).

[¶7] Certified questions from foreign courts are appropriate when the legal issue “may be determinative of the proceeding” pending in that court.  N.D.R.App.P.  47(a)(1).  By contrast, certified questions from a North Dakota court to this Court must meet a more stringent requirement that the legal question “is determinative of the proceeding.”  N.D.R.App.P. 47.1(a)(1)(A).  The reason for the disparate treatment of certified questions has been described as follows:

“A less stringent standard will be applied, however, in exercising our discretion to answer certified questions from courts of other jurisdictions under Rule 47, N.D.R.App.P.  There is a logical policy basis for this apparent dichotomy.  If we decline to answer questions certified by a court of this State, the parties may, as a matter of right, appeal from the final judgment or order of the trial court and obtain resolution of the relevant questions of law in this court.  Thus, in the interest of judicial economy and orderly procedure, we will only answer certified questions which are dispositive of the issues in the case.  However, if we decline to respond to questions certified by a federal court or court of another state, we leave that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State.”

McKenzie County v. Hodel
, 467 N.W.2d 701, 704 (N.D. 1991).

[¶8] Here, the certifying court made findings exceeding the requirements of  N.D.R.App.P. 47(a), recognizing, “[T]his question involves interpretation of North Dakota law of some magnitude,” and stating:

“The United States District Court, District of North Dakota, finds there exists no controlling precedent from the North Dakota Supreme Court on the certified question of law.  Resolution will be determinative to the proceedings currently pending in the United States District Court and will impact future product liability cases.”

The certifying court also noted:

“There is a decision from the District Court for the District of North Dakota that predicts the North Dakota Supreme Court would adopt the so-called apparent manufacturer doctrine.  
Reiss v. Komatsu America Corp.
, 735 F.Supp.2d 1125 (D.N.D. 2010).  This Court is unconvinced and is of the opinion that adoption of the apparent manufacturer doctrine is inconsistent with the law in North Dakota regarding liability for non-manufacturing sellers.”  

[¶9] The District Court certified the question to us without expressly stating whether it has concluded Cabela’s is or is not a “manufacturer” under N.D.C.C. § 28-01.3-01(1).  It appears implicit in the certification of the “apparent manufacturer” question that the court determined Cabela’s is not a “manufacturer” under North Dakota law.  However, we are neither reviewing the federal court’s decision nor deciding whether Cabela’s is a manufacturer under the facts of this case.  Rather, our role is limited to determining whether the federal court’s certification meets the requirements of N.D.R.App.P. 47 and, if so, whether we should answer the question.

[¶10] The federal court certified to us its finding that our decision in this case “will be determinative,” which is more than the “may be determinative” certification required under N.D.R.App.P. 47(a)(1).  The federal court also stated the “apparent manufacturer” doctrine runs counter to North Dakota’s product liability law and it noted its disagreement with another court’s recognition of the doctrine in 
Reiss v. Komatsu America Corporation
.  These statements underscore the lack of controlling precedent from this Court, as well as highlight the pitfall of a divided federal district if we do not answer the question.  
See
 N.D.R.App.P. 47(a)(2).  These findings and expressions by the certifying court convince us that the requirements of N.D.R.App.P. 47(a) are satisfied, and we proceed to answering the certified question.

III

[¶11] The Bornsens seek a “yes” answer to the certified question, arguing North Dakota should adopt the “apparent manufacturer” doctrine.  They argue the doctrine does not conflict with products liability law in N.D.C.C. ch. 28-01.3.  They argue legislative changes to the definition of manufacturer since 1979 suggest apparent manufacturers are now considered manufacturers under N.D.C.C. ch. 28-01.3.  Cabela’s seeks a “no” answer to the certified question.  It argues North Dakota has enacted a specific and unambiguous statutory scheme for products liability in N.D.C.C. ch. 28-01.3, which generally provides broad protection against liability for nonmanufacturing sellers like Cabela’s.  Cabela’s contends this Court should not judicially adopt the “apparent manufacturer” doctrine.

[¶12] The Restatement (Third) of Torts: Products Liability § 14 (1998) embodies the common law “apparent manufacturer” doctrine.  
See
 
id.
 cmt. b.  Section 14 provides that “[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes as its own a product manufactured by another is subject to the same liability as though the seller or distributor were the product’s manufacturer.”  Restatement (Third) of Torts: Products Liability § 14 (1998).  The Restatement (Second) of Torts § 400 (1965) was a predecessor to section 14 and also describes the common law “apparent manufacturer” doctrine, providing that “[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.”

[¶13] North Dakota has enacted N.D.C.C. ch. 28-01.3 for products liability actions.  Section 28-01.3-01(1), N.D.C.C., defines a “manufacturer” as “a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer.”  A “seller” is defined as “any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption.”  N.D.C.C. § 28-01.3-

01(3).  Section 28-01.3-04, N.D.C.C., deals with liability of nonmanufacturing sellers and provides:

“1. In any products liability action maintained against a seller of a product who did not manufacture the product, the seller shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing the personal injury, death, or damage to property. 

“2. After the plaintiff has filed a complaint against the manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of the claim against the certifying seller, unless the plaintiff can show any of the following:

a. That the certifying seller exercised some significant control over the design or manufacture of the product, or provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the personal injury, death, or damage to property.

b. That the certifying seller had actual knowledge of the defect in the product which caused the personal injury, death, or damage to property.

c. That the certifying seller created the defect in the product which caused the personal injury, death, or damage to property. 

“3. The plaintiff may at any time prior to the beginning of the trial move to vacate the order of dismissal and reinstate the certifying seller if the plaintiff can show any of the following:

a. That the applicable statute of limitation bars a product liability action against the manufacturer of the product allegedly causing the injury, death, or damage.

b. That the identity of the manufacturer given to the plaintiff by the certifying defendant was incorrect.” 

[¶14] The Legislature has informed us that “[t]he [North Dakota Century C]ode establishes the law of this state respecting the subjects to which it relates.”  N.D.C.C. § 1-02-01.  Section 1-01-06, N.D.C.C., states, “[T]here is no common law in any case in which the law is declared by the code.”  We have recognized that “it is for the legislature to determine policy, not for the courts.”  
Doyle v. Sprynczynatyk
, 2001 ND 8, ¶ 14, 621 N.W.2d 353 (quoting 
Treiber v. Citizens State Bank
, 1999 ND 130, ¶ 16, 598 N.W.2d 96).  We have further noted that “[i]t must be presumed that the Legislature intended all that it said, and that it said all that it intended to say.”  
City of Dickinson v. Thress
, 69 N.D. 748, 755, 290 N.W. 653, 657 (1940).

[¶15] In 
Vandall v. Trinity Hosps.
, 2004 ND 47, ¶¶ 14-15, 676 N.W.2d 88, we explained the standard for analyzing the potential coexistence of common law and statutory provisions under N.D.C.C. § 1-01-06:

“to mean that statutory enactments take precedence over and govern conflicting common law doctrines.  
See
 
Northern Pac. R.R. Co. v. Herbert
, 116 U.S. 642, 654 (1886); 
In the Interest of M.C.H.
, 2001 ND 205, ¶ 9, 637 N.W.2d 678; 
Hill v. Weber
, 1999 ND 74, ¶ 9, 592 N.W.2d 585; 
Martin v. Rath
, 1999 ND 31, ¶ 20, 589 N.W.2d 896; 
Cermak v. Cermak
, 1997 ND 187, ¶ 9, 569 N.W.2d 280; 
Olson v. Souris River Telecomms. Coop., Inc.
, 1997 ND 10, ¶ 13, 558 N.W.2d 333; 
Burr v. Trinity Med. Ctr.
, 492 N.W.2d 904, 907-10 (N.D. 1992); 
Nuelle v. Wells
, 154 N.W.2d 364, 365-66 (N.D. 1967); 
Fitzmaurice v. Fitzmaurice
, 62 N.D. 191, 196-200, 242 N.W. 526, 527-29 (1932); 
Reeves & Co. v. Russell
, 28 N.D. 265, 275-83, 148 N.W. 654, 657-61 (1914) (on petition for rehearing).  

“In 
Hill
, 1999 ND 74, ¶ 9, 592 N.W.2d 585, we said ‘[w]here the provisions of the statute differ from previous case law, the statute prevails.’  In 
Rath
, 1999 ND 31, ¶ 20, 589 N.W.2d 896, we said ‘[s]tatutory principles govern over general common law if there is a conflict.’  In 
Burr
, 492 N.W.2d at 907-10, we recognized a hierarchy which favored statutory law over common law, and we declined to apply a common law doctrine of equitable tolling to toll a malpractice statute of limitations.  In 
Nuelle
, 154 N.W.2d at 365-66, we concluded statutory provisions in N.D.C.C. § 9-10-06 for negligence actions prevailed over the common law doctrine that unemancipated minors could not maintain tort actions against their parents.  In 
Fitzmaurice
, 62 N.D. at 196-200, 242 N.W. at 527-29, we held the common law rule that a wife may not sue her husband in tort was abrogated by statute.  In 
Herbert
, 116 U.S. at 654, the United States Supreme Court discussed the predecessor of N.D.C.C. § 1-01-06, and said the code governs where it declares the law, but the common law prevails where the code is silent, and if language in the code is not defined by the code, that language can be explained by case law.  The common thread in the cases applying the language of N.D.C.C. § 1-01-06 is ‘[t]here cannot be two rules of law on the same subject contradicting each other.’ 
Herbert
, at 654.  
See also
 
Rath
, at ¶ 20 (‘[s]tatutory principles govern over general common law if there is a conflict.’).”

[¶16] Here, the Legislature adopted a products liability act containing a “Declaration of legislative findings and intent” that states:

“1. The legislative assembly finds that products liability reforms enacted in 1979, 1987, and 1993 have provided a needed degree of certainty in the laws governing civil actions against product manufacturers and sellers. 

“2.  In recent years it has become increasingly evident that there are still serious problems with the current civil justice system.  As a result, there is an urgent need for additional legislation to establish clear and predictable rules with respect to certain matters relating to products liability actions.”

N.D.C.C. § 28-01.3-07.  The Act broadly applies to any “product liability action,” which means:

“[A]ny action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product. . . .”

N.D.C.C. § 28-01.3-01(2).

[¶17] The specificity included in the Legislature’s adoption of N.D.C.C. ch. 28-01.3 indicates to us the clear message that it intended to restrict, rather than expand, the availability of product liability actions as a remedy for personal injury, death or property damage arising out of use of defective products.  One means utilized by the Legislature to carry out its intent was to define who is a “manufacturer,” to define who is a “seller” and then to sharply curtail liability of a “nonmanufacturing seller.” 
See
 N.D.C.C. §§ 28-01.3-01(1) and (3) and N.D.C.C. § 28-01.3-07.  We read this statutory direction as being both clear and comprehensive, leaving no room for us to recognize—or in the certifying court’s words, “adopt”—the common law or the Restatement theory of “apparent manufacturer” liability.

[¶18] Our outcome was foreseen by authors of the Restatement (Third) of Torts: Products Liability § 14 (1998), where they noted:

“To the extent that nonmanufacturers in the chain of distribution are held to the same standards as manufacturers, the rule stated in this Section is of little practical significance.  However, many jurisdictions by statute treat nonmanufacturers more leniently.  
See
 § 1, Comment e.  To the extent that a statute specifies responsibilities, the statutory terms control.  But to the extent that a statute does not, the rule in this Section states the common-law rule.”

Restatement (Third) of Torts: Products Liability § 14 cmt. b. (1998).  Here, the North Dakota Products Liability Act treats nonmanufacturing sellers “more leniently” than did the common law rule.  That is a legislative determination which we are bound to follow.

IV

[¶19] On the record certified in this case, we answer the certified question “No.”

[¶20] Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶21] On the state of the record before this Court, I would respectfully decline to answer the question certified.

[¶22] Rule 47, N.D.R.App.P., provides for certification of questions of law from federal district courts and provides, in part:

(a) Power to Answer.  The supreme court may answer questions of law certified to it by the United States Supreme Court, a court of appeals of the United States, a United States district court, or the highest appellate or intermediate appellate court of any other state, when requested by the certifying court and the following conditions are met: 

(1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding;

(2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state. 

(b) Method of Invoking.  This rule may be invoked by an order of any of the courts referred to in subdivision (a) upon the court’s own motion or upon the motion of any party to the proceeding. 

(c) Contents of Certification Order.  A certification order must contain: 

(1) a question of law formulated in a manner allowing the question to be answered by a “yes” or “no”;

(2) a statement of all facts relevant to the question certified, showing fully the nature of the controversy in which the question arose
;

(3) a statement demonstrating there is no controlling precedent in the decisions of the supreme court.

(Emphasis added.)

[¶23] The explanatory note for N.D.R.App.P. 47 says the rule is “substantially the same as the 1967 Uniform Certification of Questions of Law Act as drafted by the National Conference of Commissioners on Uniform State Laws.”  N.D.R.App.P. 47, Explanatory Note.  The explanatory note includes the following statements from the official comments to the Uniform Certification of Questions of Law Act:

This rule provides that the supreme court has the right to answer questions certified to it; it is not mandatory that the court answer certified questions.  See, for example, Atlas Life Insurance Co. v. W.I. Southern, Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed 987 (1939), and National Labor Relations Board v. White Swan Co., 313 U.S. 23, 61 S.Ct. 75, 85 L.Ed. 1165 (1941) (in both cases the Supreme Court of the United States refused to answer certified questions).  

. . . .

The statement of facts in a certification order should present all of the relevant facts.  The purpose is to give the answering court a complete picture of the controversy so that the answer will not be given in a vacuum.  The certifying court could include exhibits, excerpts from the record, a summary of the facts found by the court, and any other document which will be of assistance to the answering court.

N.D.R.App.P. 47, Explanatory Note.

[¶24] In 
Atlas Life Ins. Co. v. W.I. Southern, Inc.
, 306 U.S. 563, 566 (1939) and 
National Labor Relations Bd. v. White Swan Co.
, 313 U.S. 23, 24 (1941), the United States Supreme Court refused to answer questions certified to it by a circuit court of appeals.  In 
White Swan
, at 27, the Supreme Court stated the certified questions required the “necessity of making [a] supposition [which] reveal[ed] the hypothetical and abstract quality of the questions.”  In 
Atlas Life
, at 573, the Supreme Court explained “[t]he certificate fails to disclose whether all the facts and circumstances pertinent to this issue have been certified” and said it “should not answer, questions which may be affected by unstated matter lurking in the record, or questions which admit of one answer under one set of circumstances and a different answer under another, neither of which is inconsistent with the certificate.”

[¶25] The plain language of N.D.R.App.P. 47(a) says this Court “may answer questions of law certified” by a federal district court.  We have said the word “may” is ordinarily understood as “‘permissive rather than mandatory and operates to confer discretion.’”  
Midthun v. N.D. Workforce Safety and Ins.
, 2009 ND 22, ¶ 12, 761 N.W.2d 572 (quoting 
Matter of Adoption of K.S.H.
, 442 N.W.2d 417, 420 (N.D. 1989)).

[¶26] The majority opinion has recited the entire certified question from the federal district court and concludes, in paragraph 8, that the certifying court made findings exceeding the requirements of N.D.R.App.P. 47.  I disagree.  It is true that the district court has told us the answer to the certified question “will be determinative to the proceedings” in federal court, whereas our rule only requires that they “may” be determinative.  That, however, is exactly what gives me concern.  If the facts have been advanced to the point where the answer to the question “will be determinative,” this Court should not be asked to answer the question without the benefit of knowing those facts.  Doing so “exposes the judiciary to the danger of improvidently deciding issues and of not sufficiently contemplating ramifications of the opinion,” which Justice Crothers has cautioned against in another context.  
Sandberg v. Am. Family Ins. Co.
, 2006 ND 198, ¶ 20, 722 N.W.2d 359 (Crothers, J., concurring specially).  While we must appreciate the deference shown to the development of state law by the certification of state law questions, an undeveloped record creates risks of unintended consequences.  Under facts which are totally unknown to this Court, the opinion and the subsequent development of this case in the federal courts may be taken for an application of North Dakota law which strains our statute.

[¶27] Here, although N.D.C.C. § 28-01.3-04 authorizes dismissal of actions against nonmanufacturing sellers at an early stage in litigation, the underlying facts in this case have not been adequately developed regarding whether Cabela’s satisfies the definition of a “manufacturer” or the possible application of N.D.C.C. § 28-01.3-04 to the facts.  Cabela’s name was prominently engraved on the meat grinder and displayed on the informational brochures and packaging for the meat grinder, but this record does not reflect who prepared those documents or caused the name to be engraved on the grinder.  The record also does not establish the relationship between Pragotrade and Cabela’s.  The resolution of those factual issues may have a bearing on whether Cabela’s is a “manufacturer” under N.D.C.C. § 28-01.3-01(1), or whether the exceptions in N.D.C.C. § 28-01.3-04 are applicable to Cabela’s.  Although the statute does not use the phrase “apparent manufacturer,” some of the concepts imbedded in that phrase are statutorily captured in the definition of “manufacturer” in N.D.C.C. §§ 28-01.3-01 and 28-01.3-04.  I think it is unwise, without a clear “statement of all facts relevant to the question certified showing fully the nature of the controversy in which the question arose[,]” to answer what amounts to a hypothetical question.  The majority is willing to assume that the district court has found Cabela’s not to be a “manufacturer” under the law of North Dakota.  I am unwilling to sign an opinion that will carry the suggestion that this finding, under the state of the record sent to this Court, carries the imprimatur of our Court.  It is unknown to this Court what control Cabela’s exercised over the product causing the injury.  On this record, the certified question requires the “necessity of making [a] supposition [which] reveals the hypothetical and abstract quality of the question[].”  
See
 
White Swan
, 313 U.S. at 27.  There are unknown factual issues in this case which render the answer to the certified question purely hypothetical.

[¶28] On the factual record certified in this case, I would respectfully decline to answer the certified question.

[¶29] Carol Ronning Kapsner

Mary Muehlen Maring