# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 35

Cheryl D. Reese,                                           Plaintiff and Appellant

v.

Tia D. Reese-Young,                                        Defendant and Appellee

No. 20190202

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Justice, in which Justices McEvers and Tufte joined. Justice Crothers filed an opinion concurring specially, in which Chief Justice Jensen joined.

Scott M. Knudsvig (argued) and Matthew H. Olson (on brief), Minot, ND, for plaintiff and appellant.

Joshua A. Swanson, Fargo, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1]   Cheryl Reese appealed from an amended judgment entered after the district court granted summary judgment deciding ownership of certain mineral interests and the right to receive the mineral royalties and bonus payments.  Cheryl Reese argues the district court erred when it concluded the open mines exception to the doctrine of waste does not apply and, as a holder of a life estate in the property, she is not entitled to the royalties and bonus payments resulting from the production of oil and gas from the property.  We reverse and remand.

I

[¶2]   The minerals at issue in this case underlie the property located in Mountrail County described as:

> TOWNSHIP 153 N.; RANGE 89 W.
> Section 20: S1/2N1/2; SE1/4
> Section 29: E1/2NE1/4; S1/2; SW1/4NW1/4
> Section 30: SE1/4; E1/2SW1/4; Lot 4
> Section 31: Lots 1, 2, 3 and E1/2NW1/4; NE1/4

[¶3]   In 2005, Dennis Reese and Tia Reese-Young, who both owned an interest in the minerals at the time, entered into an oil and gas lease for the property. After several conveyances, Dennis and Cheryl Reese owned a 12.5% interest in the minerals as joint tenants, and Tia Reese-Young owned a 12.5% interest in the minerals as a tenant in common with Dennis and Cheryl Reese.  In July 2008, Dennis and Cheryl Reese conveyed their 12.5% interest to Tia Reese-Young by quit claim deed and reserved a life estate interest in the minerals. Dennis Reese died in September 2008.

[¶4]   In 2017, Cheryl Reese sued Tia Reese-Young to quiet title and for declaratory judgment determining that Cheryl Reese is the sole remaining life tenant in the property and that she is entitled to all of the proceeds to be derived from the minerals during her lifetime.  Tia Reese-Young answered and

counterclaimed to quiet title and for declaratory judgment determining Cheryl Young is not entitled to any of the income derived from oil and gas production from the property.

[¶5] Both parties moved for summary judgment. Tia Reese-Young argued the deed creating the life estate in Cheryl Reese did not explicitly reserve to Cheryl Reese an interest in the royalties, the deed was unambiguous, there were no disputed issues of material fact, and Tia Reese-Young is entitled to all of the income derived from the oil and gas production as a matter of law. Cheryl Reese argued the unambiguous language of the deed established she reserved a life estate in the minerals and she is entitled to receive the royalty payments under the open mines doctrine because an oil and gas lease had been executed and oil and gas were being produced before the life estate was created.

[¶6] After a hearing, the district court granted Tia Reese-Young's motion for summary judgment and denied Cheryl Reese's motion. The court concluded the open mines doctrine did not apply because it is not the law in North Dakota, the language of the deed controls, and there is no clear and explicit reservation of the royalties to Cheryl Reese during her life. The court concluded, as a matter of law, that Cheryl Reese was required to hold the corpus, or proceeds from the oil and gas royalties, in trust for Tia Reese-Young's benefit and that Cheryl Reese was only entitled to the income generated from the corpus during her life. Judgment was entered.

[¶7] Cheryl Reese moved to amend the judgment and for relief from the judgment under N.D.R.Civ.P. 59(j) and 60(b)(1) and (6). She argued the judgment failed to acknowledge her life estate in the property and should be amended to correct the oversight. The district court granted the motion, and an amended judgment was entered.

## II

[¶8] Cheryl Reese argues the district court erred by granting summary judgment in favor of Tia Reese-Young.

[¶9] Our standard of review for summary judgments is well-established:

2

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Fettig v. Estate of Fettig*, 2019 ND 261, ¶ 8, 934 N.W.2d 547 (quoting *Gerrity Bakken, LLC v. Oasis Petroleum N. Am., LLC*, 2018 ND 180, ¶ 8, 915 N.W.2d 677).

[¶10] The district court granted summary judgment in favor of Tia Reese-Young and ordered Cheryl Reese, as a life tenant, is not entitled to the royalties and bonus payments from the production of oil, gas, and other minerals from the property. The court explained the open mines doctrine is a common law doctrine, Cheryl Reese could not cite any North Dakota case law that adopted and applied the open mines doctrine, there is no statutory law indicating a policy or intent to follow the doctrine, and therefore the open mines doctrine is not law in North Dakota and does not apply. The court concluded the language of the deed controlled the outcome and the deed did not clearly and explicitly reserve the royalties and bonuses in Cheryl Reese during her life. The court concluded Cheryl Reese has a duty as a life tenant to preserve the property's value for Tia Reese-Young's benefit, the life tenant commits waste when it removes an asset from the property which decreases the property's value, Cheryl Reese would be decreasing the property's value by profiting from the oil and gas royalties, and any royalties or bonuses derived from the production of oil and gas is part of the corpus of the estate and Cheryl Reese must retain

3

those proceeds in trust for Tia Reese-Young. The court concluded Cheryl Reese is only entitled to the interest income generated from the proceeds of the oil and gas royalties.

[¶11] Cheryl Reese argues the district court erred when it concluded that the open mines exception to the doctrine of waste does not apply and that she is not entitled to the revenue from the production of oil and gas on the property. The open mines doctrine is a common law doctrine that states a life tenant is permitted to operate mines or wells which were open when the life estate was created and is entitled to all proceeds resulting from the operation, even if the use diminishes the market value of the remainderman's interest. *See* Restatement (First) of Property § 144 (1936). Cheryl Reese admits this Court has not yet recognized the open mines exception to the doctrine of waste, but she contends this Court has not had an opportunity to address it and there is authority in other states and secondary sources recognizing the open mines exception applies in this type of case.

[¶12] Under N.D.C.C. § 47-02-33, "The owner of a life estate may use the land in the same manner as the owner of a fee simple, except that the owner of a life estate must do no act to the injury of the inheritance." This Court has said, "It is well-settled, a life estate holder 'is entitled to both the possession and the use of the property . . . including the right to rents, issues, and profits generated by the parcel during the tenant's life.'" *Schroeder v. Buchholz*, 2001 ND 36, ¶ 21, 622 N.W.2d 202 (quoting 51 Am. Jur.2d *Life Tenants and Remaindermen* § 32 (2000)).

[¶13] However, if the life tenant's actions or use of the property result in a diminishment of the remainder interest, then the life tenant has committed waste. *See Ruggles v. Sabe*, 2003 ND 159, ¶ 6, 670 N.W.2d 356. Under the common law doctrine of waste, this Court has said, "Waste may be defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in a substantial injury." *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D. 1985); *see also Vogel v. Marathon Oil Co.*, 2016 ND 104, ¶ 31, 879 N.W.2d 471.

4

[¶14] Section 47-04-22, N.D.C.C., provides a vested remainderman with a remedy against a life tenant who commits waste, stating:

> A person having an estate in fee, in remainder, or reversion may maintain an action for an injury done to the inheritance, notwithstanding an intervening estate for life or years and although after its commission the person's estate is transferred and the person has no interest in the property at the commencement of the action.

*See also Ruggles*, 2003 ND 159, ¶ 3, 670 N.W.2d 356. The remainderman has a legal remedy against the life estate holder for any decrease in value of the remainderman's interest sustained as a result of the life estate holder's acts injuring the inheritance. *Ruggles*, at ¶ 3.

[¶15] In *Ruggles*, 2003 ND 159, ¶ 6, 670 N.W.2d 356, this Court held the remainderman had a cause of action under N.D.C.C. § 47-04-22 based on her allegation that the removal of an airplane hangar from the property resulted in a decrease in the value of her interest. We said the life tenant has a duty not to destroy or remove structures which are located on and add value to the land. *Id.* at ¶ 5. We held the remainderman was entitled to damages for waste if removal of the hangar resulted in a diminishment of the remainder interest. *Id.* at ¶ 6.

[¶16] Generally, the life tenant's removal of minerals and acceptance of the royalties or other proceeds from the sale of the minerals consumes the corpus of the estate and decreases the value of the remaindermen's interest. *See* 1 Nancy Saint-Paul, *Summers Oil and Gas* § 2:22 (2019) (stating the taking of minerals is an assault on the land which amounts to a lasting injury and deprives the remainderman of a privilege to which he is entitled to as a future tenant of the land). The taking of minerals by a person holding a life estate in the minerals diminishes the market value of the remainderman's interest and constitutes waste, unless the terms of the instrument creating the life estate expressly give the life estate holder the privilege of taking the minerals. *See* 1 *id.*

[¶17] In *Ruggles*, 2003 ND 159, ¶ 5, 670 N.W.2d 356, this Court cited Restatement (First) of Real Property § 138 (1936) for guidance in determining whether the life tenant's actions constituted waste. The Restatement provides:

> Subject to exceptions stated in . . . [§] 144 (open mines or customary cutting of timber) . . . , the owner of an estate for life in possession or in reversion has a duty not to act upon the land in which his estate for life exists so that his conduct causes the market value of the interests limited after his estate for life to be diminished.

Restatement (First) of Real Property § 138 (1936). The exception contained in section 144 states:

> When, prior to the creation of an estate for life, the land in which such estate is created has been used by extracting and selling coal, oil, iron, sand, clay or other like deposits found therein, . . . then the owner of such estate for life is privileged to continue the use so begun, although such continuance causes the market value of the interest limited after the estate for life to be diminished.

Restatement (First) of Real Property §144 (1936).

[¶18] The open mines doctrine is a common law doctrine that creates an exception to the rule that the life estate owner has a duty not to act in a manner that causes the market value of the remainderman's interest to diminish. The open mines doctrine states when real property in which a life estate is created has been used by extracting and selling oil, gas, and other minerals prior to the creation of the life estate and a lease is in effect at the creation of the life estate, then the owner of the life estate interest may continue the use even though continuing the use diminishes the market value of the remainderman's interest. *See* Restatement (First) of Property §144 (1936); *see also* 1 Saint-Paul, *supra* § 2:22 (stating the tenant is entitled to take oil and gas when there are open wells at the inception of the tenant's estate or if a lease had been made prior to the inception of the life estate because the taking of oil or gas is part of the ordinary product of the land under those circumstances and the taking is not waste); 93 C.J.S. *Waste* § 22 (2019) (stating "Where mines or quarries are open on the premises at the commencement of the tenancy, it is not usually waste to work them in the usual way even to exhaustion."); 2 *Tiffany Real Prop.*

6

§ 633 (3d ed. 2018) (stating wells opened before the commencement of the tenancy in question, may be worked by the tenant, because it is considered that the previous owner, by opening the wells, made the minerals a part of the regular profits of the land); 2 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law*, § 513, at 649 (stating a life tenant may be entitled to continue to operate an opened mine and retain the proceeds of the operation if the mine was opened before creation of the life estate). "The basis of the open mine doctrine appears to be that a life tenant given the beneficial enjoyment of land is entitled to enjoy the land in the same manner as it was enjoyed before the creation of the life estate[,]" and the creator of the life estate can prevent application of the doctrine by including a provision in the instrument creating the life estate that expressly excludes application of the doctrine. 2 Martin, *supra* § 513, at 649-50.

[¶19] The district court concluded the open mines doctrine does not apply in this case because there was no North Dakota case law applying the doctrine, no statutory law indicating that it was the legislature's intent to follow the doctrine, and therefore the doctrine is not law in North Dakota. Tia Reese-Young also argues the doctrine is not law in North Dakota and cannot be considered because it is a common law doctrine, the legislature addressed the duties and relationship between life tenants and remaindermen, and therefore the statutory law controls.

[¶20] The law in North Dakota is expressed by various sources, including state statutes and "[t]he decisions of the tribunals enforcing those rules, which, though not enacted, form what is known as customary or common law." N.D.C.C. § 1-01-03. This Court has explained, "The common law is therefore adopted by statute as the basic law applicable to civil rights and remedies not defined by the statute. Where there is no express constitutional or statutory declaration upon the subject the common law is applied." *Tarpo v. Bowman Pub. Sch. Dist. No. 1*, 232 N.W.2d 67, 70 (N.D. 1975) (citations and quotations omitted). However, "there is no common law in any case in which the law is declared by the code." N.D.C.C. § 1-01-06. "[S]tatutory enactments take precedence over and govern conflicting common law doctrines." *Finstad v. Ransom-Sargent Water Users, Inc.,* 2014 ND 146, ¶ 12, 849 N.W.2d 165

7

(quoting *Bornsen v. Pragotrade, LLC*, 2011 ND 183, ¶ 14, 804 N.W.2d 55). When a statute is designed to cover the entire field to which it relates, the common law does not apply. *Finstad*, at ¶ 12. But the common law remains relevant if there is no conflict between the statutory and common law. *See id.*

[¶21] The common law is incorporated as part of the law of this state and the common law is not derived only from the decisions of North Dakota courts. *See In re Estate of Conley*, 2008 ND 148, ¶¶ 25-26, 753 N.W.2d 384. This Court has explained, "The common law, which is based on reason and public policy, can best be determined by studying the decisions of our federal and state courts and the writings of past and present students of our country's law over all the years of American judicial history." *Id.* at ¶ 26 (quoting *Lembke v. Unke*, 171 N.W.2d 837, 842 (N.D. 1969)).

[¶22] Although there is no North Dakota case law specifically applying the open mines doctrine, other courts have applied the doctrine and their decisions provide guidance. *See, e.g., Kimbark Expl. Co. v. Von Lintel*, 391 P.2d 55 (Kan. 1964) (holding proceeds from oil and gas lease belong to life tenant when development of oil and gas lease occurred under a lease made by landowner before life estate came into being); *Nutter v. Stockton*, 626 P.2d 861, 863 (Okla. 1981) (holding the open mines doctrine permits a life tenant to receive the profits from a mining operation when the mineral lease was granted prior to the creation of the life estate); *Clyde v. Hamilton*, 414 S.W.2d 434, 439 (Tex. 1967) (holding the royalties and bonuses from mines open when the life estate began belong to the life tenant and not the remainderman); *Koen v. Bartlett*, 23 S.E. 664, 666 (W. Va. 1895) (holding life tenant has the right to the full enjoyment and use of the land and all its profits during his estate, including mines of oil or gas open when the life estate began). *See generally* Annotation, *Rights of life tenant and remaindermen inter se as to oil and gas*, 43 A.L.R. 811 (1926); C. Woerner, Annotation, *Rights of tenant for life or for years and remaindermen inter se in royalties or rents under oil, gas, coal, or other mineral lease*, 18 A.L.R.2d 98 (2011). The comments to North Dakota Mineral Title Standards § 7-03.1 address the open mines doctrine and state, "Jurisdictions which have adjudicated the issue have uniformly held that a life tenant is entitled to the benefit of an open mine without liability or accountability to the

remainderman in fee simple, unless the instrument creating the life estate otherwise specifically limits the life tenant's right in this regard."

[¶23] The open mines doctrine is a common law doctrine, which is adopted as the law in this state unless it conflicts with any statutory law. Tia Reese-Young argues the legislature addressed the duties and relationship between life tenants and remaindermen in N.D.C.C. §§ 47-02-33 and 47-04-22 and therefore the common law cannot be considered. Neither of these statutes specifically address how the proceeds from the sale of minerals or other payments under a mineral lease should be allocated between life tenants and remaindermen. *Cf.* N.D.C.C. § 59-04.2-19 (a provision of the Uniform Principal and Income Act governing how a trustee allocates royalties or other payments received from an interest in minerals). Tia Reese-Young does not argue any other statutes conflict with the open mines doctrine. The open mines doctrine is part of the law in North Dakota, and the district court erred in determining it did not apply because it is not the law in this state.

[¶24] The quit claim deed dated July 22, 2008, creating the life estate at issue in this case, states:

> WHEREAS, Grantor[s, Dennis Reese and Cheryl Reese,] desire[] to transfer said minerals to the Grantee, Tia D. Reese-Young, while reserving a life estate interest to said minerals to the grantors for the term of their lives, then upon the death of both grantors to Tia D. Reese-Young.
> NOW THEREFORE, for and in consideration of the sum of One Dollar; and other good and valuable consideration, grantors do hereby QUIT CLAIM to grantee, Tia D. Reese-Young, an undivided 12.5% interest – mineral interest only, in and to the following real property lying and being in the County of Mountrail, State of North Dakota, subject to the reservation in grantors of a life estate interest for the term of their lives . . . .

The plain language of the deed reserves a life estate interest in the minerals but does not include any additional language allocating the royalties, bonuses, or other payments from the minerals during the term of the life estate. However, evidence established Dennis Reese and Tia Reese-Young entered

into an oil and gas lease for the property in January 2005 and oil and gas was being produced by November 2007, which was prior to the creation of the life estate. Evidence established there was an oil and gas lease for the property and a well was producing under the terms of the lease at the time of the creation of the life estate. The deed did not contain any language excluding application of the open mines doctrine, and therefore the open mines doctrine applies.

[¶25] Here, in particular, where the deed creating the life estate only reserved the minerals in the property and did not reserve the surface, it is clear to us that the open mines doctrine applies. A life estate in mineral interests alone is nearly worthless except for mining or oil and gas production purposes and, without application of the open mines doctrine, the result would be that the entity holding the life estate would have the responsibility of being the trustee for the remainder interest with little or no benefit therefrom. We conclude, as a matter of law, Cheryl Reese is entitled to the proceeds from the oil and gas production, including the royalties and bonus payments, and she is not required to hold the proceeds in trust for Tia Reese-Young. The district court erred in granting summary judgment in favor of Tia Reese-Young.

III

[¶26] We reverse the judgment and remand for entry of judgment in favor of Cheryl Reese consistent with this opinion.

[¶27]  Gerald W. VandeWalle
       Lisa Fair McEvers
       Jerod E. Tufte

**Crothers, Justice, specially concurring.**

[¶28] I concur in the result reached by the majority because I agree the open mines doctrine is the common law, and that law is applicable to this case. I

write separately to make clear that my concurrence is limited to application of the doctrine to the present facts; namely that the mineral interest owner leased the property, and production commenced under the lease, prior to creation of the remainder interest.

[¶29] All cases are decided by this Court based on the facts presented on appeal. *See Desautel v. North Dakota Workmen's Compensation Bureau*, 28 N.W.2d 378, 383 (N.D. 1947) ("Obviously, the effect and scope of the decision in any given case as precedent is measured by the terms of the decision itself. Where a rule of law is announced in a decision predicated on facts stated in the decision, such facts and they alone constitute a factual basis for the rule of law announced by the decision."). Nevertheless, I write separately to caution against over-reading our holding here because I am less than certain the open mines doctrine would apply if any material fact in this case was different. I also reserve judgment on other questions such as whether the doctrine would apply if the conveyance to the remainderman included both a surface and mineral estate, or if the life tenant executed leases to similar or different minerals or substances after the remainderman's title vested.

[¶30] Daniel J. Crothers
     Jon J. Jensen, C.J.